**Morris GREENBERG, Plaintiff,**

v.

**CUTLER–HAMMER, INC. and Andrew O. Riteris, Defendants.**

**No. 74–C–620.**

United States District Court, E. D. Wisconsin.

July 13, 1978.

Shellow & Shellow by James R. Glover, Milwaukee, Wis., for plaintiff.

Burke & Schoetz by David J. Schoetz, Milwaukee, Wis., for Cutler-Hammer, Inc.

Prosser, Wiedabach & Quale by William P. Croke, Douglas H. Starck, Milwaukee, Wis., for Andrew O. Riteris.

MYRON L. GORDON, District Judge.

DECISION and ORDER

This case is before me on the defendant Riteris' motion for summary judgment. The plaintiff seeks damages from the defendants because of their alleged involvement in the procurement of a federal indictment charging the defendant with mail fraud in violation of 18 U.S.C. § 1341. This case can better be understood when viewed against the background of litigation involving the parties to this case that has taken place in the last ten years.

The plaintiff was and is the president of the Universal Relay Corporation, a seller of surplus relays that the corporation purchases mainly from the United States government. Relays are mechanical devices which provide a means for remotely controlling the circuits of electrically operated accessories such as aircraft motors. The defendant, Cutler-Hammer, is a manufacturer of relays and has for a long period sold many of them to the United States government.

Relays are sold by Cutler-Hammer under part numbers and military standard numbers. These numbers are significant because relays bearing such numbers are represented to be manufactured to meet government-prescribed specifications. As

the government's standards and specifications change, these numbers change correspondingly so that a particular number on the label of a relay indicates that the part met the government specification existing during a specific period of time. Many of the relays sold by Cutler-Hammer, while not sold directly to the government, are sold to manufacturers who need them for equipment ordered by the government and require that they exhibit evidence of compliance with government specifications for new relays.

Cutler-Hammer, over a period of several years, received complaints from aircraft manufacturers concerning relays which bear its labels. Cutler-Hammer discovered by testing that the relays about which it received the complaints had been repainted, rebuilt, and then relabeled with current military standard numbers or in some other manner misrepresented.

It was suspected by Cutler-Hammer that the Universal Relay Corporation, among others, was engaged in selling surplus Cutler-Hammer relays about which misrepresentations were made. In order to find out if this was true, attorney Andrew Riteris, who was retained by Cutler-Hammer to commence lawsuits against persons or corporations misrepresenting Cutler-Hammer relays, ordered certain relays from Universal Relay Corporation through the Foreign Trade and Engineering Company of Milwaukee, Wisconsin. The purchase order requested relays bearing Cutler-Hammer's current catalogue numbers and the current military standard numbers. It was found that the relays sent by Universal Relay Corporation to Foreign Trade had been relabeled with counterfeit Cutler-Hammer labels and that the part numbers and military standard numbers on the relays received were then current numbers; however, it was found that the relays had been manufactured under prior part and military standard numbers.

In 1968, Cutler-Hammer filed a civil suit against Universal Relay Corporation for trade-mark infringement and unfair competition. The defense by Universal in that suit was that the relays sent to Foreign Trade, while relabeled and renumbered, met the then current military specifications and, thus, Universal was entitled to renumber and relabel them. This defense was rejected in court, and a preliminary injunction was issued. *Cutler-Hammer, Inc. v. Universal Relay Corp.*, 285 F.Supp. 636 (S.D.N.Y.1968). Subsequently, a judgment containing a permanent injunction and other relief was issued. *Cutler-Hammer, Inc. v. Universal Relay Corp.*, 328 F.Supp. 868 (S.D.N.Y.1970), *aff'd*, 444 F.2d 1092 (2d Cir. 1971).

In 1971, the defendant Riteris took the information discovered in the civil actions to an official of the United States Postal Service. Subsequently, Mr. Greenberg was indicted for mail fraud, and a trial on the charges was scheduled in this district before Judge John W. Reynolds. In 1973, as a result of plea bargaining, the charges against Mr. Greenberg were dismissed. The Universal Relay Corporation, as part of the plea bargaining, entered a plea of no contest to the same charges for which Mr. Greenberg had been indicted, and it was adjudged guilty of the charges.

Mr. Greenberg now seeks damages against the defendants because of their alleged procurement of the indictment against him. The complaint posits three theories of recovery against the defendants for their alleged activities. The claims for relief are based upon (1) malicious prosecution; (2) abuse of process; and (3) conspiracy. These claims arise under the substantive law of Wisconsin, and jurisdiction is predicated upon diversity of citizenship pursuant to 28 U.S.C. § 1332. For the reasons which will follow, summary judgment will be granted in favor of Mr. Riteris as to all three of the plaintiff's claims against him.

## I. MALICIOUS PROSECUTION

The plaintiff claims that the defendant Riteris is liable for malicious prosecution as a result of the plaintiff's indictment for mail fraud in 1971. The plaintiff must establish six elements to sustain a claim of malicious prosecution:

"1. There must have been a prior institution or continuation of some regular

judicial proceedings against the plaintiff in this action for malicious prosecution.

"2. Such former proceedings must have been by, or at the instance of, the defendant in this action for malicious prosecution.

"3. The former proceedings must have terminated in favor of the defendant therein, the plaintiff in the action for malicious prosecution.

"4. There must have been malice in instituting the former proceedings.

"5. There must have been want of probable cause for the institution of the former proceedings.

"6. There must have been injury or damage resulting to the plaintiff from the former proceedings."

*Maniaci v. Marquette University*, 50 Wis.2d 287, 297–98, 184 N.W.2d 168 (1971); *Elmer v. Chicago & N. W. Ry. Co.*, 257 Wis. 228, 231, 43 N.W.2d 244 (1950).

■ If the defendant is able to show that as to any one of these elements there is no factual dispute and as a matter of law that element cannot be established, he is entitled to a summary judgment as to the claim of malicious prosecution. Rule 56, Federal Rules of Civil Procedure. I find that, as a matter of law, probable cause existed to support Mr. Riteris' actions in turning over the evidence to the postal service which led to the plaintiff's indictment. It follows that Mr. Riteris is entitled to summary judgment on the plaintiff's claim of malicious prosecution.

In *De Vries v. Dye*, 222 Wis. 501, 269 N.W. 270 (1936), the court defined probable cause as

".   .   . a state of facts in the mind of the prosecutor as would lead a man of ordinary caution and prudence to believe or entertain an honest and strong suspicion that the person arrested is guilty."

A person is guilty of mail fraud under 18 U.S.C. § 1341 if

".   .   . having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises,   .   .   . [that person]   .   .   . for the purpose

of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or takes or receives therefrom, any such matter of thing   .   .   .."

Thus, in this case, the relevant inquiry is whether facts existed which would reasonably have led the defendant Riteris to believe that Mr. Greenberg "devised or intended to devise a scheme or artifice to defraud."

The plaintiff contends that the defendant Riteris lacked probable cause for initiating criminal proceedings against the plaintiff because, allegedly, there were no material differences between the relabeled relays sold by the plaintiff's company and newer relays with the same labels manufactured and sold by Cutler-Hammer. If such allegations were true, the plaintiff might be in a position to prove that Mr. Riteris knew there was no real difference among the relays and withheld such facts from the prosecuting authorities or that he had no information which would support the representation that the relays were materially different. If either theory could be proved, the plaintiff might be able to establish that the defendants acted without probable cause. *See, e. g., Schwartz v. Schwartz*, 206 Wis. 420, 425, 240 N.W. 177 (1932).

■ The defendant, however, cogently argues that the plaintiffs are effectively foreclosed from contesting the issue of probable cause because of findings of fact as to whether there were material differences in the relays made in the cases of *Cutler-Hammer, Inc. v. Universal Relay Corp.*, 328 F.Supp. 868 (S.D.N.Y.1970), aff'd, 444 F.2d 1092 (2d Cir. 1971), and *Cutler-Hammer, Inc. v. Universal Relay Corp.*, 285 F.Supp. 636 (S.D.N.Y.1968). A similar motion for summary judgment in this case, based on the collateral estoppel effect of these previous civil cases, was made in 1975. At that time, I stated:

"I need not accept the facts in the New York cases as established and unchallengeable in this case until the record of

the New York litigation is submitted for analysis, and I have determined that the issues for which estoppel is sought were actually litigated, were necessary to sustain the judgment, were identical to the issues before this court, and that Morris Greenberg was in privity with Universal Relay in the New York action." *Greenberg v. Cutler-Hammer, et al.*, 403 F.Supp. 1231, 1234 (E.D.Wis.1975).

The plaintiff in his brief admits that he was in privity with Universal Relay in the New York actions. Moreover, upon reviewing the transcripts as well as the decisions in those actions, I find that the question as to whether a material misrepresentation was made when the relays were relabeled was in fact litigated between these same parties and necessarily resolved to support the judgment of the courts in those actions. Thus, justice and an interest in judicial economy dictate that the finding of misrepresentation be binding in this action.

The doctrine of collateral estoppel requires that in order for a factual determination in one case to be binding on a court in a second case, three requirements must be met. First, the fact must have been litigated in the initial case. Second, the court in the initial case must have made a valid and final determination as to that fact. Third, the factual determination in the initial case must have been essential to the judgment in that case. *Canaan Products, Inc. v. Edward Don & Co.*, 388 F.2d 540 (7th Cir. 1968); Restatement, Judgments § 68 (1942).

The transcripts of the New York civil litigation reveal that many of the witnesses testified as to the inferior quality of the relays which had been relabeled by Universal Relay Corporation. It is clear then that the question as to whether the relabeled relays were materially different from those made to current specifications by Cutler-Hammer was litigated in the New York law suits.

The second requirement of the doctrine of collateral estoppel was also met in the New York civil litigation. The court made the factual determination that there was a material difference between the new and the old relabeled relays since the newer relays had to pass more stringent tests to meet new government standards which the old relays could not meet:

> "After the issuance of MIL–R 6106C plaintiff requalified most of its relays to the new specification. In order to obtain requalification, plaintiff was required to incorporate *significant improvements* in order to meet the more stringent requirements of MIL–R 6106C. For example, it had to develop and test a new glass coating for its hermetically sealed relays. It took about three years before approval was obtained. Similarly, plaintiff had to change the method of mounting relay coils to their bases in order to meet the increased vibration and torque requirements of MIL–R 6106C. In other instances the terminal markings had to be changed. After qualification of any of its designs to MIL–R 6106C, it adopted the required production acceptance tests and those relays which passed such tests were identified in its catalogues and on the labels of the relays by the new Cutler-Hammer parts numbers and the new Military Standard numbers which were prescribed by MIL–R 6106C." 328 F.Supp. at 871. (emphasis added).

Because of this difference, the court found that the relabeling of old surplus relays with new military standard numbers sustained an action for unfair competition:

> "The plaintiff has sustained its actions for common law unfair competition in that the defendants have competed unfairly by misrepresenting aircraft relays of plaintiff's manufacture in respect to their qualification to military specifications and quality. Unfair competition of this type also constitutes trade-mark misuse within the meaning of 15 U.S.C. § 1125." 328 F.Supp. at 879.

Finally, I believe that the fact that there were material differences in the relays was necessary to the judgment of the New York court. This is especially true as to the broad equitable relief which the court granted Cutler-Hammer in the case:

> "In granting equitable relief in unfair competition cases, the conduct of the unfair competitor, as well as the nature of

the articles involved and the characteristics of the merchandising methods must be considered, *Champion Spark Plug Co. v. Sanders*, [331 U.S. 125, 67 S.Ct. 1136, 91 L.Ed. 1386] *supra.* In the present case, the nature of the article and the misrepresentation of military standard numbers is such that its misuse may endanger life and safety of others. Therefore, the plaintiff's remedy should be an injunction which would assure complete discontinuance of the unfair competition. In view of the potential danger associated with misrepresented relays and in view of the defendants' disregard of the preliminary injunction and other orders of this court, the plaintiff shall be entitled to injunctive relief." 328 F.Supp. at 881.

Therefore, I conclude that the finding of the district court for the southern district of New York that Universal Relay misrepresented the quality of the relays it sold by relabeling them is binding in the case at bar. It follows that Mr. Riteris had reason to believe a scheme to defraud existed and thus had probable cause to give evidence of that fraud to the United States Postal Service. Therefore, the defendant Riteris is entitled to summary judgment with regard to the plaintiff's claim of malicious prosecution.

## II. ABUSE OF PROCESS

The defendant Riteris has also moved that summary judgment be entered in his favor on the claim of abuse of process. The plaintiff opposes this motion, arguing that to establish abuse of process one need only establish (1) that process was used, and (2) for a purpose other than the one for which it is designed.

However, in *Thompson v. Beecham*, 72 Wis.2d 356, 241 N.W.2d 163 (1975), the court made it clear that the two elements mentioned above are not in and of themselves sufficient to establish an abuse of process:

"The existence of an improper purpose alone is not enough, for the improper purpose must also culminate in an *actual misuse of the process.*" *Id.* at 363, 241 N.W.2d at 166. (emphasis added).

There do not appear to be any factual disputes in this case as to whether the defendant Riteris in any way misused the legal process once that process was commenced. Although he testified in the criminal proceedings against Mr. Greenberg, Mr. Riteris did not determine the course of those proceedings or the subsequent plea bargaining that took place.

Therefore, I am persuaded that the defendant Riteris' motion for summary judgment on the claim of abuse of process should be granted.

## III. CONSPIRACY

The defendant Riteris has also moved that he have summary judgment on the plaintiff's claim of conspiracy. The plaintiff states in his brief that his claim of conspiracy is based on an agreement to achieve by unlawful means a purpose that is not itself unlawful. Since the unlawful means alleged are the malicious prosecution and abuse of process claims upon which summary judgment for the defendant Riteris will be granted, Mr. Riteris is entitled to summary judgment on the claim of conspiracy as well.

Therefore, IT IS ORDERED that the defendant Riteris' motion for summary judgment be and hereby is granted.