HAROLD AND JULIA GERSHMAN FAMILY FOUNDATION, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

HAROLD GERSHMAN, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 16385–81, 16386–81.     Filed August 15, 1984.

---

*Bruce I. Hochman* and *William Weintraub*, for the petitioners.

*Dennis Brager*, for the respondent.

COHEN, *Judge*: In docket No. 16385–81, petitioner Harold and Julia Gershman Family Foundation seeks redetermination of excise taxes and additions to tax determined in a notice dated May 27, 1981, as follows:

| TYE Dec. 31— | Sec. 4940[1] | Sec. 4942(a) | Sec. 4945(a)(1) | Sec. 6651(a)(1) |
|---|---|---|---|---|
| 1973 | $756 | - - - | $1,571 | $393 |
| 1974 | 703 | $2,528 | 2,634 | 1,291 |
| 1975 | 240 | 4,140 | - - - | 1,035 |
| 1976 | 240 | 4,140 | - - - | 1,035 |
| 1977 | 240 | 4,140 | - - - | 1,035 |
| 1978 | 120 | 4,140 | - - - | 1,035 |
| 1979 | 120 | 4,140 | - - - | 1,035 |
| 1980 | 120 | 4,140 | - - - | 1,035 |

plus additional taxes of $27,599 pursuant to section 4942(b) and $42,050 pursuant to section 4945(b)(1), and additions to tax of $69,649 pursuant to section 6684.

In docket No. 16386–81, petitioner Harold Gershman seeks redetermination of excise taxes and additions to tax determined in a notice dated May 27, 1981, as follows:

| TYE Dec. 31— | Sec. 4941(a) | Sec. 4941(b) | Sec. 6651(a)(1) | Sec. 6684 |
|---|---|---|---|---|
| 1973 | $785 | | $196 | |
| 1974 | 20,388 | | 5,097 | |

---

[1] Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954 as amended and in effect during the years here in issue. All references to Rules are to the Tax Court Rules of Practice and Procedure.

| TYE Dec. 31— | Sec. 4941(a) | Sec. 4941(b) | Sec. 6651(a)(1) | Sec. 6684 |
|---|---|---|---|---|
| 1975 | $20,888 | | $5,222 | |
| 1976 | 21,388 | | 5,347 | |
| 1977 | 21,888 | | 5,472 | |
| 1978 | 22,388 | | 5,597 | |
| 1979 | 22,661 | | 5,665 | |
| 1980 | 20,157 | | - - - | |
| 1981 | 20,157 | | - - - | |
| | 170,700 | | 32,596 | |
| | | $806,266 | | $806,266 |

Petitioners have moved for partial summary judgment determining that the transfer by petitioner Harold Gershman (Gershman) of a promissory note secured by an all-inclusive trust deed to petitioner Harold and Julia Gershman Family Foundation (foundation) on April 1, 1973, constituted an act of self-dealing within the meaning of section 4941(d) and that subsequent transactions were acts of correction of that prior act. Respondent seeks partial summary judgment determining that the initial assignment was not an act of self-dealing and that subsequent transfers were separate acts of self-dealing.

### FINDINGS OF FACT

Some of the facts have been stipulated, and the stipulation of facts is incorporated herein by reference. Other facts are admitted in petitioners' responses to respondent's request for admissions and petitioners' answers to respondent's interrogatories.

Petitioner Harold Gershman resided in Beverly Hills, CA, and the office of the foundation was located in Beverly Hills, CA, at the time the petitions were filed herein.

On September 15, 1971, Harold and Julia Gershman sold an apartment building located at 737 South Oxford (Oxford property) to the Hobart-Oxford Building Co. for $535,000 plus prepaid interest and fees. A part of the purchase price was in the form of a 10-year, 7-percent note in the sum of $515,000 (AIPN), secured by an all-inclusive deed of trust (AITD) on the Oxford property.

At the time of sale of the Oxford property by Gershman, the property was encumbered by two notes (the senior notes) secured by trust deeds. The first senior note had been given in July 1962 and was in favor of Sun Life Assurance Co. of

Canada. As of September 15, 1971, it had an unpaid balance of approximately $183,000. The second senior note was given in June 1969 in favor of David and Rose Sessin in the amount of $50,000, all of which was due on August 1, 1974. Interest, only, was payable monthly on the second note.

These senior notes were the subject of an addendum to the AITD, which addendum included the following paragraphs:

Should either of the above Senior Notes become due and payable during the term of this A.I. Deed of Trust, the A.I. Beneficiary [Gershman] agrees that he will discharge said Senior Notes in accordance with their terms.

2. A.I. Beneficiary has agreed to pay said Senior Notes secured by the Senior Deeds of Trust and to comply with all the terms and conditions contained therein. Should the A.I. Beneficiary or any successor to said Beneficiary or successor to the real property secured by this All-Inclusive Deed of Trust, default in (a) any installment of (b) other terms or conditions of said Senior Notes or the Deeds of Trust securing said notes, the Trustor of this All-Inclusive Deed of Trust, hereinafter referred to as A.I. Trustor, or his successor in interest, may make payments directly to the holders of the Senior Notes or may perform any of the terms or conditions of said notes required to be performed, and any payments so made or costs incurred in the compliance therewith shall be credited to the installments next due on the Promissory Note hereinafter referred to as A.I. Promissory Note, which is secured by this All-Inclusive Deed of Trust.

With respect to any payment made by the A.I. Trustor or his successor in interest, paid to the owner or holder of the Senior Promissory Notes secured by the Senior Deeds of Trust upon the subject property, whether payment be of interest or principal or both, and provided that the holder of the A.I. Promissory Note be given written notice of such payment (a) that portion of said payment on the Senior Promissory Notes, applied to principal of said Senior Notes shall be construed as payment on account of principal of the A.I. Promissory Note, (b) that portion of said payment applied to interest shall be construed as payment of interest on account of the unpaid balance of the A.I. Promissory Note at the rate specified in the A.I. Promissory Note.

A.I. Beneficiary or his successor in interest has agreed that A.I. Trustor shall have the right at any time to prepay to the holders of the Senior Notes all or any part of the principal balance of the A.I. Promissory Note.

Irrespective of any provision of this All-Inclusive Deed of Trust to the contrary notwithstanding, all demands for sale delivered to the Trustee for foreclosure of this All-Inclusive Deed of Trust shall be reduced by the unpaid balances, if any, of principal, interest, and charges existing under the Senior Notes and the Senior Deeds of Trust existing at the time of the Trustee's sale upon such foreclosure, provided that satisfactory evidence of such unpaid

balances shall be submitted to the Trustee by the A.I. Beneficiary, or his successor in interest, prior to such sale.

> HOBART OXFORD BUILDING COMPANY
> a General Partnership
>
> *     *     *     *     *     *     *
>
> [Signed by the general partners]

THE FOREGOING ADDENDUM TO DEED OF TRUST IS HEREBY ACCEPTED BY HAROLD GERSHMAN, ONE OF THE BENEFICIARIES HEREUNDER

> (Signed) Harold Gershman
> HAROLD GERSHMAN

The foundation was established by a Declaration of Trust executed by Harold and Julia Gershman on August 16, 1972. At all times material hereto, the foundation was a private foundation as defined in section 509(a), and Gershman was a "disqualified person" with respect to the foundation as defined in section 4946(a).

On April 1, 1973, the Gershmans transferred their interest in the AIPN and in the AITD to the foundation. The foundation thus became the successor-in-interest to the "A.I. Beneficiary" referred to in the above-quoted language of the addendum. On June 20, 1974, the Hobart-Oxford Building Co. failed to make the payment due that date on the AIPN. On July 15, 1974, Gershman executed a 6-percent unsecured promissory note, due July 15, 1979, in favor of the foundation for $100,000. On June 17, 1974, the foundation assigned the AIPN and the AITD to Gershman, after adopting the following resolution:

It is hereby resolved that a certain note and deed of trust covering property (Legal description: Lots 54 & 55 of Tract 2189, City of Los Angeles) also known as 737 S. Oxford Street which was assigned to the Harold & Julia Gershman Family Foundation on April 1, 1973 be hereby assigned to Harold Gershman in exchange for a note in the amount of $100,000.00 bearing interest at 6% payable quarterly and due on July 15, 1979.

The reasons for the above action are as follows:

1. This original assignment by Harold & Julia Gershman to the Foundation on April 1, 1973 was made upon advice of legal counsel, who was not aware of an underlying obligation of $50,000.00 which is due and payable on

August 1, 1974. This must be paid in order to protect the equity in said document.

2. Whereas the maker of the above note [AIPN] has defaulted in payments due on the above note, certain legal steps must now be taken under terms of deed of trust to protect said equity.

3. Inasmuch as the Harold & Julia Gershman Family Foundation has neither the funds nor expertise to proceed and to rectify the above situation, it is decided that it is to the advantage and benefit of the Foundation to pursue this course of action.

> (Signed)  Ronald Gershman
> RONALD GERSHMAN, *Trustee*

> (Signed)  Gloria Nagy
> GLORIA NAGY, *Trustee*

Meanwhile, on July 16, 1974, the Hobart-Oxford Building Co. filed a suit against Gershman and others in the Superior Court of California, County of Los Angeles, seeking rescission of the contract of sale for the Oxford property.

### OPINION

Petitioners contend that the assignment in April 1973 by Gershman to the foundation was an act of self-dealing because the AIPN and the AITD were subject to a lien of the two senior notes created by the addendum to the AITD executed in September 1971. Petitioners further argue that the reassignment of the AIPN and the AITD, accompanied by the execution of the Gershman note in favor of the foundation, constituted correction of the prior act of self-dealing. Respondent contends that the original assignment of the AIPN and the AITD was not an act of self-dealing because the property transferred was not "subject to" any lien and that the subsequent acts were acts of self-dealing giving rise to excise taxes and other sanctions under section 4941. The parties each seek partial summary judgment declaring the correctness of their respective positions.

### 1973 Transactions

The parties disagree as to the applicability of the following language of section 4941:

SEC. 4941(d). SELF-DEALING.—

(1) IN GENERAL.—For purposes of this section, the term "self-dealing" means any direct or indirect—

(A) sale or exchange, or leasing, of property between a private foundation and a disqualified person;

\*   \*   \*   \*   \*   \*   \*

(2) SPECIAL RULES.—For purposes of paragraph (1)—

(A) the transfer of real or personal property by a disqualified person to a private foundation shall be treated as a sale or exchange if the property is *subject to* a mortgage or similar lien which the foundation assumes or if it is *subject to* a mortgage or similar lien which a disqualified person placed on the property within the 10-year period ending on the date of the transfer; [Emphasis added.]

## Section 53.4941(d)–2(a)(2), Excise Tax Regs., provides:

(2) *Mortgaged property.* For purposes of subparagraph (1) of this paragraph, the transfer of real or personal property by a disqualified person to a private foundation shall be treated as a sale or exchange if the foundation assumes a mortgage or similar lien which was placed on the property prior to the transfer, or takes subject to a mortgage or similar lien which a disqualified person placed on the property within the 10-year period ending on the date of transfer. For purposes of this subparagraph, the term "similar lien" shall include, but is not limited to, deeds of trust and vendors' liens, but shall not include any other lien if such lien is insignificant in relation to the fair market value of the property transferred.

Petitioners argue that the express language of the addendum to the AITD, quoted above, makes the AIPN "subject to" a lien of the senior notes within the meaning of section 4941(d)(2)(A) and that this interpretation is consistent with respondent's broad construction of the phrase "subject to" in Rev. Rul. 80–132, 1980–1 C.B. 255 (life insurance policy "subject to" outstanding policy loan) and Rev. Rul. 78–395, 1978–2 C.B. 270 (real property "subject to" lien).

Respondent argues that the senior notes and related trust deeds were, as of the date they were executed, encumbrances only on the real property and not on the property actually transferred to petitioner; thus, petitioner did not take any property "subject to" those encumbrances. Respondent cites a series of cases interpreting the phrase "subject to" in relation to determination of payments received in the year of sale by the seller of real property in relation to the installment sale provisions of former section 453 and argues that under those

cases, the foundation did not take property "subject to" the preexisting mortgages. See *Hunt v. Commissioner*, 80 T.C. 1126 (1983); *Goodman v. Commissioner*, 74 T.C. 684 (1980); affd. without published opinion 673 F.2d 1332 (7th Cir. 1981); *Voight v. Commissioner*, 68 T.C. 99 (1977), affd. 614 F.2d 94 (5th Cir. 1980); *Stonecrest Corp. v. Commissioner*, 24 T.C. 659 (1955). The analogy is not appropriate because, in this case, the property transferred to the foundation was the secured note and not the security, i.e., the real property.

Moreover, the rationale of the section 453 cases is not helpful here. The purpose of interpreting the phrase "subject to" with reference to former section 453 was to determine whether or not the seller in a transaction had received consideration during the year of sale in excess of 30 percent of the purchase price and thus could not elect installment sale treatment of his gain on the sale. The phrase itself was not found in the statute but was used in respondent's regulation, section 1.453–4(c), Income Tax Regs., to explain that a mortgage on transferred property would be considered part of the selling price received by the seller "whether the property is merely taken subject to the mortgage or whether the mortgage is assumed by the purchaser." The cases interpreting the phrase in that context were concerned with whether or not the buyer, as part of the sales transaction, had relieved the seller of some preexisting liability so that the seller had obtained, currently, the substantial benefit of the entire gain to be realized on the sale. See *Hunt v. Commissioner, supra* at 1142–1143; *Voight v. Commissioner, supra* at 110–112. That substantial benefit, if found, was then included in calculating the percentage of the purchase price received in the year of sale.

The purpose of the phrase "subject to" in section 4941(d) is to describe as a matter of substance the type of prohibited transactions between foundations and certain classes of individuals covered by that section. See generally *Adams v. Commissioner*, 70 T.C. 373, 379 (1978). The sanctions in section 4941(d) imposed on exchanges between a foundation and a disqualified person (as well as the other forms of self-dealing listed in the statute, such as use of foundation assets by a disqualified person) express congressional intent that "self-dealing not be engaged in." This type of preclusion was

designed to avoid problems under the "arm's-length standards" of prior law. S. Rept. 91–552, 1969–3 C.B. 423, 442–443. Thus the statutory phrase "subject to" in section 4941(d)(2)(A) should be broadly construed to apply to transfers in which an individual may improperly benefit from a transaction even though there is no clear and immediate detriment to, or relinquishment by, the foundation. In this totally different statutory context, we are not bound to the narrow, and here inapposite, construction urged by respondent. See *Helvering v. Stockholms Enskilda Bank*, 293 U.S. 84, 93–94 (1934).

The addendum to the AITD, in express language and in substance, imposes a charge on the AIPN to the extent that the obligor on that note may apply the payments due thereon to satisfaction of the senior notes. Therefore, there was a lien on the transferred property. The lien was created at the time the addendum was executed, in September 1971, and is independent of the liens on the real property created by the senior notes and trust deeds associated with them. The lien is significant in relation to the fair market value of the AIPN. See sec. 53.4941(d)–2(a)(2), Excise Tax Regs., *supra*.

When the AIPN and the AITD were assigned to the foundation, they carried with them the risk that the obligor on the AIPN would claim an offset upon failure of Gershman or the foundation to make payments due on the senior notes or would assert the obligor's right to prepay the senior notes and to reduce, accordingly, amounts owing on the AIPN. As demonstrated by the subsequent history, protection of the beneficiary's interest in the AIPN and the AITD also involved the possible necessity of making the substantial payment on one of the senior notes, $50,000 due August 1974, and litigation with the obligor. After the assignment, Gershman personally had no interest to lose; he had shifted the risks to the foundation. That benefit to him is a hallmark of self-dealing. Accordingly, the AIPN secured by the AITD was "subject to" the lien of those senior notes for purposes of section 4941(d)(2)(A). Petitioners' motion for summary judgment that the 1973 assignment was an act of self-dealing should be granted.

### 1974 Transactions

Section 4941(e)(3) provides as follows:

SEC. 4941(e). OTHER DEFINITIONS.—For purposes of this section—

\*       \*       \*       \*       \*       \*       \*

(3) CORRECTION.—The terms "correction" and "correct" mean, with respect to any act of self-dealing, undoing the transaction to the extent possible, but in any case placing the private foundation in a financial position not worse than that in which it would be if the disqualified person were dealing under the highest fiduciary standards.

Petitioners assert that the transfer of the AIPN and the AITD by the foundation to Gershman in July 1974 constituted correction to the extent possible, to wit, reversed the act of self-dealing occurring in April 1973, and they therefore seek summary judgment on this issue as well. They contend that the AIPN and the AITD were worthless after the obligor's default and that the Gershman note was given without consideration and was motivated solely by charitable intent.

Respondent argues that petitioners' motion must be denied on this issue because, even if the 1973 transaction were an act of self-dealing, there are material issues of fact in controversy. Respondent contends that it is necessary to determine the value of the AITD on the date of each transfer in order to determine whether correction has occurred. We agree with respondent in that we cannot determine, as a matter of law, whether the transaction has been undone "to the extent possible" and whether the resulting financial position of the foundation is or is not "worse than that in which it would be if the disqualified person were dealing under the highest fiduciary standards." Petitioners' motion must be denied to the extent that it seeks a determination of the effect of the 1974 transactions.

Respondent, however, seeks partial summary judgment determining that the acceptance of the Gershman note by the foundation in 1974 was in itself an act of self-dealing, to wit, an extension of credit. If, however, that transaction were an act of correction, it would not constitute self-dealing. Sec. 53.4941(e)–1(c)(1), Excise Tax Regs. Also, if the note were given without consideration, it would not be an extension of credit. Thus, factual issues remain, and respondent's motion for partial summary judgment must also be denied.

*An appropriate order will be issued.*