ESTATE OF BERNARD J. REIS, DECEASED, REBECCA G.
REIS, EXECUTRIX, PETITIONER *v.* COMMISSIONER OF
INTERNAL REVENUE, RESPONDENT

Docket Nos. 3095-77, 8466-78,      Filed November 10, 1986.
8775-77.

*Arthur N. Greenberg, Sidney J. Machtinger*, and *Gary L. Kaplan*, for the petitioners.
*George W. Connelly, Jr.*, for the respondent.

## OPINION

SWIFT, *Judge*: This matter is before the Court on cross-motions for summary judgment. Each party alleges that if its or his respective motion for summary judgment is denied, factual issues will remain which preclude entry of summary judgment in favor of the other party. The excise tax and additions to tax in dispute herein exceed $21 million.

The issues in this case arise out of the widely publicized and much litigated Estate of Mark Rothko (hereinafter sometimes referred to as the estate). Mark Rothko was a well-known American abstract expressionist painter who died in 1970. Bernard J. Reis, decedent (Reis), was one of the executors of the Estate of Mark Rothko. Reis also was one of the directors of the Mark Rothko Foundation (the foundation). The foundation was established by Mark Rothko in 1967. In his will, after making certain specific bequests to family members, Mark Rothko bequeathed all of his remaining property to the foundation.

Reis also was an officer and employee of the Marlborough Gallery, Inc. (the gallery). In May of 1970, shortly after Mark Rothko's death, the executors of the estate, including Reis, entered into contracts on behalf of the estate with the gallery under which the paintings of Mark Rothko (which comprised the bulk of the estate's assets) could be sold only by the gallery or its affiliated corporations, offices of which were located throughout the world. The contracts were to last 12 years, and the gallery was to receive a commission of 50 percent of the proceeds from the sale of each painting.

In New York State courts, the surviving members of Mark Rothko's family sued the estate, the executors thereof (including Reis), and the gallery. The foundation intervened and became a party to the State court proceedings. The litigation, insofar as pertinent to the motions before us, sought to void the 12-year exclusive sales contract between the estate and the gallery, to remove Reis as an executor of the estate, and to recover monetary damages. Numerous opinions were rendered by the New York State courts in that litigation (hereinafter sometimes referred to as the New York litigation), the citations for which are as follows:

*Will of Rothko*, 56 A.D.2d 819, 393 N.Y.S.2d 682 (1977).

*Rothko v. Reis*, 42 A.D.2d 693, 346 N.Y.S.2d 714 (1973).

*Rothko v. Levine*, 41 A.D.2d 807, 342 N.Y.S.2d 372 (1973).

*Estate of Rothko*, 98 Misc. 2d 718, 414 N.Y.S.2d 444 (Surr. Ct., N.Y. County 1979).

*Estate of Rothko*, 95 Misc. 2d 492, 407 N.Y.S.2d 954 (Surr. Ct., N.Y. County 1978).

*Estate of Rothko*, 84 Misc. 2d 830, 379 N.Y.S.2d 923 (Surr. Ct., N.Y. County 1975), modified and affd. 56 A.D.2d 499, 392 N.Y.S.2d 870 (1977), affd. 43 N.Y.2d 305, 401 N.Y.S.2d 449 (1977).

*Estate of Rothko*, 80 Misc. 2d 140, 43 N.Y.2d 305, 362 N.Y.S.2d 673 (Surr. Ct., N.Y. County 1974).

*Estate of Rothko*, 77 Misc. 2d 168, 352 N.Y.S.2d 574 (Surr. Ct., N.Y. County 1974), affd. 47 A.D.2d 623, 366 N.Y.S.2d 610 (1975), leave to appeal denied 36 N.Y.2d 647, 372 N.Y.S.2d 1026 (1975).

*Estate of Rothko*, 73 Misc. 2d 548, 342 N.Y.S.2d 220 (Surr. Ct., N.Y. County 1973), revd. 42 A.D.2d 558, 345 N.Y.S.2d 567 (1973), leave to appeal dismissed 33 N.Y.2d 822, 350 N.Y.S.2d 911 (1973).

*Estate of Rothko*, 71 Misc. 2d 320, 336 N.Y.S.2d 130 (Surr. Ct., N.Y. County 1972), modified and affd. 40 A.D.2d 965, 338 N.Y.S.2d 854 (1972).

*Estate of Rothko*, 71 Misc. 2d 74, 335 N.Y.S.2d 666 (Surr. Ct., N.Y. County 1972), affd. 43 A.D.2d 819, 351 N.Y.S.2d 940 (1974).

*Estate of Rothko*, 69 Misc. 2d 752, 330 N.Y.S.2d 915 (Surr. Ct., N.Y. County 1972), affd. 40 A.D.2d 1083, 338 N.Y.S.2d 855 (1972).

Much of the legal relief sought by the surviving family of Mark Rothko was granted in the New York litigation. Reis and the other executors of the estate were removed, the contract with the gallery was voided, and monetary damages were awarded to the estate.

The New York litigation did not go unnoticed by the Internal Revenue Service. Respondent's representatives audited the foundation and determined that Reis was liable for various self-dealing excise taxes under section 4941[1] for the years 1970 through 1974 in the total amount of $18,582,500, and additions to tax under sections 6651 and 6684 for the same years in the respective total amounts of $518,125 and $2,112,500.

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954 as in effect during the years at issue herein.

Petitioner's motion for summary judgment is based on the following three alternative legal arguments: (1) That section 4941(d)(1)(E) and the related provisions are so vague and imprecise that they are unconstitutional and void; (2) that the assets of the estate were separate and distinct from the assets of the foundation and therefore that any improper, non-arm's-length conduct that occurred in administering the assets of the estate do not also constitute self-dealing in the use of the assets of the foundation; and (3) that whatever misuse of the assets of the foundation may have occurred, under the undisputed facts of this case, such misuse did not constitute self-dealing by Reis because the assets of the foundation were not used for the benefit of or transferred to Reis.

In his determination concerning petitioner's liability for the self-dealing excise taxes, and in his motion for summary judgment herein, respondent relies heavily on specific findings of fact made by the New York State courts in the New York litigation. Respondent contends that under Fed. R. Evid. 201 this Court is entitled to take judicial notice of those findings. If so, those findings would be deemed to be conclusively established herein and would serve as the factual basis for respondent's motion for summary judgment.

As indicated, if we rule against either party on its or his respective motion for summary judgment, each contends that we also should deny the motion for summary judgment of the other party. Petitioner contends that respondent's legal theory for his motion for summary judgment (namely, that this Court is entitled to take judicial notice of the specific findings of the New York State courts) is improper. Respondent contends that petitioner's arguments in support of its motion for summary judgment are erroneous as a matter of law. We address first petitioner's arguments.

*Petitioner's Motion for Summary Judgment*

*Constitutionality of the Self-Dealing Excise Taxes*

Petitioner argues that in light of the large amounts of Federal excise taxes (e.g., the approximate $21 million at issue herein) that can be assessed against an individual for

self-dealing with respect to the assets of a private foundation, it is particularly important that the statutory language be clear and precise. If ambiguous, petitioner argues that the Court should not be hesitant to void the statute as unconstitutional. Petitioner submits that subparagraph (E) of section 4941(d)(1) is so vague that it should be held unconstitutional.[2]

Although based on slightly different reasons, the constitutionality of the self-dealing excise taxes of section 4941 and the underlying regulations previously have been upheld. *Rockefeller v. United States*, 572 F. Supp. 9, 12-14 (E.D. Ark. 1982), affd. per curiam 718 F.2d 290 (8th Cir. 1983), cert. denied 466 U.S. 962 (1984). A number of court opinions have discussed the statutory scheme of the self-dealing excise taxes, and each opinion has recognized those provisions as a valid legislative response to perceived abuses in the use of private foundations. *Gershman Family Foundation v. Commissioner*, 83 T.C. 217, 224-225 (1984); *Adams v. Commissioner*, 70 T.C. 373, 379 (1978); *Matter of Kline*, 403 F. Supp. 974, 978-979 (D. Md. 1975), affd. per curiam 547 F.2d 823 (4th Cir. 1977). We find no basis for holding any of the provisions of section 4941 unconstitutional.

## Estate Property versus Foundation Property

Petitioner contends that under New York law the paintings of Mark Rothko that were the subject matter of the May 1970 contracts entered into by Reis and the other executors on behalf of the estate and the gallery constituted, at that time, property of the estate, not assets of the foundation. Petitioner thus contends that regardless of the propriety of those contracts, as a matter of law, the contracts could not have constituted acts of self-dealing by Reis with respect to assets of the foundation.

---

[2]The relevant statutory language provides as follows:

SEC. 4941. TAXES ON SELF-DEALING.

(d) SELF-DEALING.—

(1) IN GENERAL.—For purposes of this section, the term "self-dealing" means any direct or indirect—

\*　　\*　　\*　　\*　　\*　　\*　　\*

(E) transfer to, or use by or for the benefit of, a disqualified person of the income or assets of a private foundation \* \* \*

Respondent contends that because the foundation was a beneficiary under Mark Rothko's will, the foundation had a vested beneficial interest in the property of the estate. Respondent contends that Reis' acts with respect to the property of the estate simultaneously and adversely affected the foundation's beneficial interest therein and thereby constituted an indirect use by or for the benefit of Reis of the assets of the foundation. Respondent cites section 53.4941(d)-1(b)(3), Excise Tax Regs., as authority for the general proposition that acts of self-dealing with respect to property of an estate also will be regarded as acts of self-dealing with respect to assets of a private foundation that has a beneficial interest in the property of the estate. For the reasons explained below, we agree with respondent on this issue.

Section 53.4941(d)-1(b)(3), Excise Tax Regs., clearly contemplates that the interest of a private foundation in the property of an estate, as a beneficiary thereof, will be treated as an "asset" of the private foundation under section 4941(d)(1)(E). Accordingly, acts of self-dealing with respect to property of an estate may also constitute acts of self-dealing with respect to assets of a private foundation which is a beneficiary of the estate. Section 53.4941(d)-1(b)(3), Excise Tax Regs., provides, however, an exception to what otherwise is considered acts of self-dealing if, among other requirements, the transaction is approved by a probate court and if the transaction reflects an exchange at fair market value.[3]

---

[3]Insofar as pertinent, sec. 53.4941(d)-1(b)(3), Excise Tax Regs., provides as follows:

(3) *Transactions during the administration of an estate or revocable trust.* The term "indirect self-dealing" shall not include a transaction with respect to a private foundation's interest or expectancy in property (whether or not encumbered) held by an estate (or revocable trust, including a trust which has become irrevocable on a grantor's death), regardless of when title to the property vests under local law, if—
(i) The administrator or executor of an estate or trustee of a revocable trust either—
(a) Possesses a power of sale with respect to the property,
(b) Has the power to reallocate the property to another beneficiary, or
(c) Is required to sell the property under the terms of any option subject to which the property was acquired by the estate (or revocable trust);
(ii) Such transaction is approved by the probate court having jurisdiction over the estate (or by another court having jurisdiction over the estate (or trust) or over the private foundation);
(iii) Such transaction occurs before the estate is considered terminated for Federal income tax purposes pursuant to paragraph (a) of § 1.641(b)-3 of this chapter (or in the case of a revocable trust, before it is considered subject to section 4947);
(iv) The estate (or trust) receives an amount which equals or exceeds the fair market value of the foundation's interest or expectancy in such property at the time of the transaction, taking

Petitioner concedes that the contracts entered into between the estate and the gallery do not qualify for the exception allowed in the section 53.4941(d)-1(b)(3), Excise Tax Regs. The sales contracts were not approved by the probate court and the terms of the contracts apparently did not reflect the fair market value of the paintings. Petitioner argues, however, that because section 53.4941(d)-1(b)(3), Excise Tax Regs., is written in the negative form (i.e., because it explains what transactions are excluded from being treated as acts of self-dealing under section 4941), the regulation does not cover transactions that are to be treated as acts of self-dealing under section 4941. We disagree.

It is obvious to us that the only reason section 53.4941(d)-1(b)(3), Excise Tax Regs., takes a negative approach and describes certain exceptions to acts of self-dealing is that in the absence of those exceptions, such transactions would have been covered by section 4941. In other words, in light of the terms of section 53.4941(d)-1(b)(3), Excise Tax Regs., it is clear that transactions affecting the assets of an estate generally are treated also as affecting the assets of any private foundation which, as a beneficiary of the estate, has an expectancy interest in the assets of the estate.

As previously mentioned, the validity of section 53.4941(d)-1(b)(3), Excise Tax Regs., has been sustained. See *Rockefeller v. United States, supra.* The general purpose of the regulation was explained as follows:

It logically follows that Congress would be concerned about the circumvention of an estate's assets which are earmarked for a private foundation, especially in a case such as this, where the bulk of the estate is bequeathed to a charitable trust. It is also reasonable to subject such an estate, in part, to the statutory checks which Congress has deemed fit for private foundations. [*Rockefeller v. United States*, 572 F. Supp. 9, 14 (E.D. Ark. 1982).]

In summary, regardless of whether the foundation is considered to have had a vested or merely an expectancy interest under New York law in the property of the Mark Rothko Estate, under section 4941 and the relevant Treasury regulations, the expectancy interest the foundation had in the estate is treated as an asset of the foundation, and

into account the terms of any option subject to which the property was acquired by the estate (or trust); * * *

transactions affecting property of the estate are treated as affecting assets of the foundation. Such transactions are excepted from the definition of acts of self-dealing under section 4941 only if they qualify for the exception described in section 53.4941(d)-1(b)(3), Excise Tax Regs., or under one of the other available exceptions (e.g., the exception for transactions which provide only incidental benefits to disqualified persons). Sec. 53.4941(d)-2(f)(2), Excise Tax Regs.

*Benefit to Petitioner*

Petitioner's third argument in support of its motion for summary judgment is that the alleged acts of self-dealing only could have benefited Reis in a nonpecuniary manner and that under any proper reading of section 4941, that section does not reach nonpecuniary benefits. We disagree.

The language of section 4941(d)(1)(E) (note 2 *supra*) does not suggest that it is limited to pecuniary benefits, and we find no basis for imposing such a limitation. Section 4941(d) enumerates in detail those categories of activities that will constitute acts of self-dealing. The purpose of that enumeration was to clarify what acts would be considered acts of self-dealing and to minimize the need to use subjective standards in evaluating potential acts of self-dealing. S. Rept. 91-552 (1969), 1969-3 C.B. 423, 442-443; *Rockefeller v. United States*, 572 F. Supp. 9, 12-13 (E.D. Ark. 1982).

Petitioner argues that respondent's interpretation of section 4941(d)(1)(E) is erroneous because it is too broad and fails adequately to distinguish between significant and insignificant personal benefits accruing to a disqualified person. We again disagree. Implicit in the statutory language of subparagraph (E) of section 4941(d)(1) is the requirement that the benefits accruing to the disqualified person be significant. That reading of the statute is supported by Treasury regulations which expressly provide that incidental or tenuous benefits accruing to a disqualified person will not constitute acts of self-dealing. See sec. 53.4941(d)-2(f)(2), Excise Tax Regs.[4]

---

[4]Sec. 53.4941(d)-2(f)(2), Excise Tax Regs., provides—

(2) *Certain incidental benefits.* The fact that a disqualified person receives an incidental or tenuous benefit from the use by a foundation of its income or assets will not, by itself, make such use an act of self-dealing. Thus, the public recognition a person may receive, arising from the charitable activities of a private foundation to which such person is a substantial

We also note that respondent contends that the benefits accruing to Reis as a result of the alleged acts of self-dealing were pecuniary in nature and were substantial. Although such allegation does not establish either of those facts, we must assume such facts to be true for purposes of deciding petitioner's motion for summary judgment. *Espinoza v. Commissioner*, 78 T.C. 412 (1982). If petitioner establishes in a subsequent trial herein that Reis, as a disqualified person, received tenuous benefits from his use of the assets of the foundation, section 53.4941(d)-2(f)(2), Excise Tax Regs., will protect petitioner from imposition of the self-dealing taxes.

For the reasons set forth above, petitioner's motion for summary judgment against respondent will be denied.

## *Respondent's Motion for Summary Judgment*

Respondent argues that this Court, pursuant to Fed. R. Evid. 201,[5] should take judicial notice of the specific findings of fact of the New York State courts in the New York litigation. Respondent argues that those findings constitute adjudicative facts of which this Court should take judicial notice and that they thereby are conclusively established for purposes of the instant proceeding. Respondent argues that those findings of fact establish that Reis was a disqualified person under section 4941, that Reis engaged in acts of self-dealing, and that the benefits

---

contributor, does not in itself result in an act of self-dealing since generally the benefit is incidental and tenuous. For example, a grant by a private foundation to a section 509(a)(1), (2), or (3) organization will not be an act of self-dealing merely because such organization is located in the same area as a corporation which is a substantial contributor to the foundation, or merely because one of the section 509(a)(1), (2), or (3) organization's officers, directors, or trustees is also a manager of or a substantial contributor to the foundation. Similarly, a *scholarship or a fellowship grant to a person other than a disqualified person, which is paid or* incurred by a private foundation in accordance with a program which is consistent with—

(i) The requirements of the foundation's exempt status under section 501(c)(3),

(ii) The requirements for the allowance of deductions under section 170 for contributions made to the foundation, and

(iii) The requirements of section 4945(g)(1), will not be an act of self-dealing under section 4941(d)(1) merely because a disqualified person indirectly receives an incidental benefit from such grant. Thus, a scholarship or a fellowship grant made by a private foundation in accordance with a program to award scholarships or fellowship grants to the children of employees of a substantial contributor shall not constitute an act of self-dealing if the requirements of the preceding sentence are satisfied. For an example of the kind of scholarship program with an employment nexus that meets the above requirements, see § 53.4945-4(b)(5) (Example 1).

[5] Hereinafter, unless otherwise noted, all rule references will be to the Federal Rules of Evidence.

accruing to Reis were direct and substantial. Accordingly, respondent argues that those findings properly may serve as the basis for a decision that petitioner is liable for the self-dealing taxes at issue herein.

In the New York litigation, among other improprieties, the contracts between the Mark Rothko Estate and the gallery were found to have been entered into on a non-arm's-length basis and the executors were found to have acted imprudently. With regard to the reason Reis, as an executor of the estate, agreed to the terms of the two contracts with the gallery, the New York State courts described the personal benefits accruing to Reis as a result of the contracts as follows:

the prestige and status of Reis as a director, secretary and treasurer of MNY [Marlborough Gallery, Inc.] apart from his salary as secretary-treasurer provided by Lloyd's MNY, and his fringe benefits and perquisites, were quite important to Reis' life style. The court infers and finds that Reis was concerned and insistent on the continuation of this prestigious status. He was known and wanted to be known as a collector of valuable masterworks of many artists. [Reis] continued to sell some of his and his family's private collection for substantial sums through MNY before, during and after the critical period of these estate negotiations. Even though MNY appears to have used the same twenty percent formula for commissions for selling Reis' consigned paintings as for those owned by other collectors, the elaborate color catalogues and efforts of Marlborough promotion on behalf of Reis were extraordinary when compared to efforts in behalf of other collectors. Reis' and his immediate family's share of such sales by Marlborough of part of their private collections for about eight years before through two years after the May 21, 1970 estate contracts here complained of, aggregated for Reis and his family almost $1,000,000. Air tickets to and from Venice and Houston were supplied to Reis by MNY purportedly to help MNY promote the enhancement of Mark Rothko's work after his death. It would seem that this aspect, and other aspects of his part-time association with MNY, were amenities of a prestigious and undemanding nature which he did not wish to relinquish. * * * [*Estate of Rothko*, 84 Misc. 2d 830, 379 N.Y.S.2d 923, 939 (Surr. Ct., N.Y. County 1975).]

Respondent contends that the New York litigation was exhaustive and expensive and dealt with all aspects of Reis' acts as an executor of the estate, his acts as a director of the foundation, and his acts as an employee of the gallery. The issues in that litigation were hotly contested and Reis was represented by reputable New York counsel. In summary, in the interests of judicial economy, respondent

beseeches this Court to conclude that Reis already has had his day (i.e., years) in court and should not be allowed to relitigate herein the facts relating to his acts as an executor of the Mark Rothko Estate, as a director of the foundation, and as an employee of the gallery.

Petitioner objects to respondent's motion for summary judgment and argues that judicial notice under rule 201 may not be taken of the findings of the New York State courts because such findings do not constitute "adjudicative facts" under rule 201. For the following reasons, we agree with petitioner's reading of rule 201.

Rule 201, in relevant part, provides as follows:

Rule 201. Judicial Notice of Adjudicative Facts

(a) Scope of rule. This rule governs only judicial notice of adjudicative facts.

(b) Kinds of facts. A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.

Rule 201(b) requires that before a fact can be judicially noticed, it must be either (1) generally known within the community or (2) capable of accurate and ready determination by sources whose accuracy cannot reasonably be questioned. Certainly, the specific findings made in the New York litigation of which we are asked to take judicial notice herein are not generally known within the community. The question thus turns on whether the factual findings of the New York State courts pertaining to the administration of the Mark Rothko Estate qualify under the second test of rule 201(b). With regard thereto, the Advisory Committee Notes to the Federal Rules of Evidence state as follows:

Subdivision (b). With respect to judicial notice of adjudicative facts, the tradition has been one of caution in requiring that the matter be beyond reasonable controversy. This tradition of circumspection appears to be soundly based, and no reason to depart from it is apparent. * * *

\*  \*  \*  \*  \*  \*  \*

The rule proceeds upon the theory that these considerations call for dispensing with traditional methods of proof only in clear cases. * * *

This rule is consistent with Uniform Rule 9(1) and (2) which limit judicial notice of facts to those "so universally known that they cannot

reasonably be the subject of dispute," those "so generally known or of such common notoriety within the territorial jurisdiction of the court that they cannot reasonably be the subject of dispute," and those "capable of immediate and accurate determination by resort to easily accessible sources of indisputable accuracy." The traditional textbook treatment has included these general categories (matters of common knowledge, facts capable of verification), McCormick §§ 324, 325, and then has passed on into detailed treatment of such specific topics as facts relating to the personnel and records of the court, *Id.* § 327, and other governmental facts, *Id.* § 328. * * *
[Advisory Committee's Notes, 56 F.R.D. 183, 204-205.]

As suggested above in the last sentence from the Notes of the Advisory Committee, under rule 201, records of a particular court in one proceeding commonly are the subject of judicial notice by the same and other courts in other proceedings. *St. Louis Baptist Temple v. Federal Deposit Insurance Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979). That a particular case is on file, its docket number, who the attorneys of record are, who the presiding judge is, and who the clerk of the court is, are all facts that are part of the public record. Thus, they are capable of ready and accurate determination and cannot reasonably be questioned. Also generally subject to judicial notice under rule 201 is the fact that a decision or judgment was entered in a case, that an opinion was filed, as well as the language of a particular opinion. *Jacques v. Railroad Retirement Board*, 736 F.2d 34, 40 (2d Cir. 1984); *Mandarino v. Pollard*, 718 F.2d 845, 849 (7th Cir. 1983); *Green v. Warden, U.S. Penitentiary*, 699 F.2d 364, 369 (7th Cir. 1983); *Rodic v. Thistledown Racing Club*, 615 F.2d 736, 738 (6th Cir. 1980); *Matter of Phillips*, 593 F.2d 356, 357 (8th Cir. 1979); *Barrett v. Baylor*, 457 F.2d 119, 124 n.2 (7th Cir. 1972).

Once a court takes judicial notice of the opinion of another court, it may examine the language of that opinion to determine what the other court decided. That examination may reveal that the issues of fact and issues of law litigated in the other proceeding are identical to the issues being litigated in the present proceeding. If so, the court may apply the principle of collateral estoppel or res judicata to bar further litigation of the same issues in the present proceeding. For cases illustrating the taking of judicial notice of opinions of other courts followed by the applica-

tion of collateral estoppel or res judicata, see *Mandarino v. Pollard, supra* at 849-850; *Greenberg v. Cutler-Hammer, Inc.*, 403 F. Supp. 1231, 1234 (E.D. Wis. 1975), and 452 F. Supp. 1387, 1389 (E.D. Wis. 1978); *deMarrais v. Community College of Allegheny County*, 407 F. Supp. 79, 81 (W.D. Pa. 1976).[6]

In applying the above principles to the facts of this case, we are mindful of what previously has been said concerning the usefulness and benefits of judicial notice, as follows:

> With these aspects of the principle [of judicial notice] in mind, a large field opens for reducing the tedious proof of notorious facts. The principle is an instrument of a usefulness hitherto unimagined by judges. Let them make liberal use of it; and thus avoid much of the needless failures of justice that are caused by the artificial impotence of judicial proceedings. [9 J. Wigmore, Evidence, sec. 2583, at 819 (J. Chadbourn rev. 1981).]

This is a very old case. Much litigation arising out of the administration of the Mark Rothko Estate already has occurred. It certainly will be tedious if this Court is required to rehear any significant facts concerning the administration of the estate. No one would be more pleased than this Court if we simply could take judicial notice of the many opinions of the New York State courts and make evidentiary and ultimate findings of fact herein based solely on the findings of fact set forth in those opinions.

Although we can and do take judicial notice herein under rule 201 of the existence of the New York State court opinions concerning the Mark Rothko Estate, we cannot take judicial notice of the specific findings of fact set forth therein. Such findings do not satisfy the two tests of rule 201(b). They are not generally known to the public, nor are they so indisputable that their accuracy cannot reasonably be questioned. The mere fact that a court in one opinion makes findings of fact is not a basis for the same or

---

[6] In support of his motion for summary judgment, respondent asserts only the doctrine of judicial notice under rule 201, not the doctrine of collateral estoppel. Respondent's failure herein to rely on collateral estoppel apparently is based on the principle that collateral estoppel generally only applies when the issues of fact or the issues of law previously litigated were the same as those now being litigated. *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326-333 (1979); *Montana v. United States*, 440 U.S. 147, 153 (1979); *Wright v. Commissioner*, 84 T.C. 636, 639 (1985); *Jaggard v. Commissioner*, 76 T.C. 222, 223-224 (1981). Apparently, because the issues of fact involved in the New York litigation involving the Mark Rothko Estate are sufficiently different from the issues of fact that are involved herein under sec. 4941, respondent has not argued that the factual findings of the New York State courts are to be found herein on the basis of collateral estoppel.

another court in another proceeding to take judicial notice of those findings and to deem them to be indisputably established for purposes of the pending litigation. In the absence of the application of collateral estoppel, petitioner is not precluded from relitigating herein the facts relating to her acts as an executrix of the Mark Rothko Estate and as a director of the foundation. Because such facts remain in dispute herein, respondent's motion for summary judgment is premature and must be denied. Rule 121, Tax Court Rules of Practice and Procedure.

*Appropriate orders will be issued.*