STANLEY S. LEVY AND MARTHA R. LEVY, Petitioners, v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Levy v. Commissioner
Docket No. 18383-86.
United States Tax Court
T.C. Memo 1987-609; 1987 Tax Ct. Memo LEXIS 654; 54 T.C.M. (CCH) 1300; T.C.M. (RIA) 87609; December 14, 1987; As amended December 15, 1987 Robert I. White and George W. Connelly, Jr., for the petitioners. David W. Johnson, for the respondent. WILLIAMS
MEMORANDUM FINDINGS OF FACT AND OPINION WILLIAMS, Judge: This case is before us on cross-motions for summary judgment pursuant to Rule 121, Tax Court Rules of Practice and Procedure.[1] The Commissioner determined a deficiency in petitioners' *655 Federal income tax for their 1979 taxable year in the amount of $ 24,701.00 and an addition to tax for fraud pursuant to section 6653(b) [2] against petitioner Stanley S. Levy in the amount of $ 12,351.00. The issues we must decide are (1) whether we may take judicial notice pursuant to Rule 201, Federal Rules of Evidence, of the opinion and findings of fact of a United States Magistrate and a United States District Court in a prior summons enforcement proceeding; (2) whether the evidence upon which respondent based his notice of deficiency was obtained from petitioners in violation of the Internal Revenue Manual; (3) whether the evidence upon which respondent based his notice of deficiency was obtained from petitioners in violation of their constitutional rights under the 4th and 5th Amendments; and (4) the appropriate remedy for any such violations. FINDINGS *656 OF FACT Petitioners, Stanley S. and Martha R. Levy, are husband and wife who resided at Lake Charles, Louisiana when they filed their petition in this case. Stanley S. Levy ("petitioner") is a dentist. Petitioner kept records of daily receipts and monthly summaries for his dental practice himself. His wife wrote the checks and his secretary recorded deposits from his bank accounts and gave the totals to him for posting on his records. Petitioner gave the accountants who prepared his income tax returns the monthly summaries but not the record of daily receipts. Petitioners' joint income tax return for their 1982 taxable year was selected for audit as a result of its Discriminant Function ("DIF") [3] score. In November 1984, the return was assigned to Revenue Agent Robert Fox for audit. The audit was subsequently expanded to include the taxable years 1979, 1980, 1981, and 1983. [4]
*657 On December 10 and 11, 1984, Fox met with petitioner's accountants and examined his books and records for the taxable year 1982, including bank statements, bank deposit records, and records of daily receipts and monthly summaries from petitioner's dental practice. Fox determined that petitioner's monthly summary sheets, which he turned over to his accountants for preparation of petitioners' income tax return, omitted income in excess of $ 30,000.00 that appeared on the record of daily receipts. Fox also noted that there were no currency deposits from the dental practice in the bank records. Fox interviewed petitioner on December 11, 1984. He questioned petitioner about the inconsistency between the daily receipt records and the monthly summaries. Petitioner replied that any discrepancy could be attributed to his secretary's failure to provide him with totals from both of his bank accounts. In response to Fox's observation that there were no currency deposits from the dental practice in petitioner's bank accounts, petitioner falsely stated that he had an established clientele who paid by check and that he did not receive any cash payments. Fox also observed that one of petitioner's *658 checking accounts showed cash deposits in even thousands of dollars and that the sum of the deposits was not included on the monthly summaries or on petitioners' 1982 tax return. Fox hen asked petitioner whether there were individual records maintained for each patient, showing the dates of services, the nature of services rendered, and the amounts charged. Petitioner told him that there were patient record cards, and Fox requested to see them. After his meeting with petitioner on December 11, 1984, Fox went to the Calcasieu Parish, Louisiana courthouse and examined the deed records to determine whether petitioner had a history of buying and selling real estate. In addition, Fox went to petitioners' residence to determine their standard of living. By letter dated December 20, 1984, Fox scheduled another appointment with petitioner's accountants for January 11, 1985. In that letter he requested a Power of Attorney for the years 1981 and 1983, an explanation from petitioner of his accounting system, and an extension of the statute of limitations for 1981. After his meeting with Fox, petitioner engaged a law firm to represent him in the Internal Revenue Service examination. *659 Russell W. Murray, a consultant in tax matters who frequently performed work for petitioner's counsel, was given the responsibility of representing petitioner in the audit. Murray had worked for the Internal Revenue Service for 27 years, most of that time as a criminal investigator or "special agent" and subsequently as a group manager and regional analyst with what is now the Criminal Investigation Division. On January 11, 1985, Fox met with Murray at petitioner's accountants' offices. Fox assumed that Murray worked for the accounting firm and was not told otherwise. The power of attorney that Murray submitted showed the accounting firm's address and all of Fox's contracts with Murray were at or through the accountants' offices. Fox met with Murray on January 14, 15, and 16, 1985, and examined the same categories of records for the taxable years 1981 and 1983 that he had previously examined for 1982. He discovered the same inconsistencies in petitioner's records for 1981 and 1983 as he had for 1982. In addition, Fox examined patient record cards for 1981, 1982, and 1983 and discovered, contrary to petitioner's assertion at the December 11, 1984 meeting, that petitioner *660 regularly received cash payments from patients. Fox found $ 20,000.00 to $ 22,000.00 in currency receipts for 1981, 1982, and 1983 that were not recorded on the monthly summaries. The Internal Revenue Manual Audit Techniques Handbook for Internal Revenue Agents provides guidelines for use by examiners in auditing tax returns. Internal Revenue Manual 4231, section 981 sets forth the procedure to be followed if the examiner concludes the the taxpayer has committed fraud: (1) When the examiner discovers a firm indication of fraud, the examination should be immediately suspended without disclosing to the taxpayer or representative the reason for the action. (a) The findings should be reported in writing through the group manager to the Chief, Examination Division. (b) The purpose of the referral is to enable the Criminal Investigation function to evaluate the criminal potential of the case and decide whether or not a joint investigation should be undertaken. It is important, therefore, that the examiner's referral report contain detailed information to enable the Criminal Investigation *661 Function to make a proper evaluation. [Emphasis added.] [4]
*662 Murray believed that a firm indication of fraud for 1982 existed by January 14, 1985. He testified that he nonetheless continued to cooperate fully with Fox because he believed that Fox had decided to conclude the case as a civil examination. [6] On January 16, 1985, in an effort to conclude the examination, Murray gave Fox copies of what he characterized as "corrected" Federal income tax returns for 1981, 1982, and 1983, a Form 870, Waiver of Assessment and Collection of Taxes, and a check in the amount of $ 95,323.00, representing the proposed additional taxes due for the three years. Fox accepted the "corrected" returns as explanations of how Murray had computed the amount due and not as amended returns. He also accepted the check but refused to accept the Form 870 to preclude petitioners from arguing that he had completed the examination and that he was bound by those figures. Fox also noted that the "corrected" returns reflected additional income unrelated to petitioner's dental practice and inquired as to the nature of the income. *663 On January 16, 1985, Fox concluded that there was a firm indication of fraud for the taxable years 1981, 1982, and 1983. He prepared a fraud referral report, Form 2797, and submitted it to his group manager on January 28, 1985, in anticipation of referring the case for criminal investigation. While he was preparing the report, Fox continued his examination. On January 22, 1985, he received information he had requested from Murray on January 16 concerning income unrelated to petitioner's dental practice. Fox thought this information might provide an additional indication of fraud but had already decided to submit a referral report regardless of what additional information he received from Murray. In addition, Fox met with Murray on January 25, 1985 but did not receive any new information at that time. [7]
Fox's group manager approved his report but Richard White, Chief of the Examination Division, concluded that the evidence did not yet establish a firm indication of fraud. He returned the report to Fox with instructions to examine prior years relying on the six-year statute of limitations *664 provided in section 6501(e) for omissions in excess of 25 percent of gross income. Fox contacted Murray on February 19, 1985 and informed him that he was going to proceed with an audit of petitioners' 1979 and 1980 returns. When Murray noted that the three-year statute of limitations for those years had expired, Fox told him that he had been instructed to determine whether the six-year statute of limitations under section 6501(e) was available. On March 6 and 7, 1985, Fox met with Murray and examined petitioner's patient record cards, bank statements, bank deposit records and daily production and collection record sheets but no the monthly summary sheets for 1979 and 1980 because Murray would not provide them. He concluded that there were understatements of income for the taxable years 1979 and 1980. Fox advised Murray that he would have to submit the case to his superiors for review before he could make any determination as to the amount of the deficiencies. [8]
*665 On or about April 5, 1985, respondent commenced a criminal investigation against petitioner with respect to his taxable years 1980, 1981, and 1983. When this case was submitted in June, 1987, there had not been a referral to the Department of Justice for prosecution, and the six-year statute of limitations for tax crimes has expired for 1980. Petitioner has not, at any time, been under criminal investigation with respect to his 1979 taxable year. On September 3, 1985, Special Agent Donald M. Barnes, Criminal Investigation Division, served an Internal Revenue Service Administrative Summons on petitioner with respect to respondent's examination of petitioners' taxable years 1980 through 1983. The Summons requested the production of certain documents that previously had been provided to Fox. Petitioner refused to comply and in early 1986, the Department of Justice commenced a summons enforcement proceeding in the United States District Court, Western District of Louisiana, Lake Charles Division. [9]
In his Answer to Petition to Enforce *666 Internal Revenue Service Summons, petitioner alleged, as he has in this case, that Fox violated his 4th and 5th Amendment rights by failing to comply with the Internal Revenue Manual and making misrepresentations about his purpose. Consequently, petitioner argued, any information obtained by the Internal Revenue Service and Fox could not be used in any proceeding against him. Petitioner also asserted his 5th Amendment privilege against self-incrimination. During the summons enforcement proceeding heard on March 14, 1986 and April 1, 1986 before United States Magistrate James Trimble, petitioner, Murray, Fox, petitioner's counsel Robert I. White, and petitioner's accountants testified concerning the examination of petitioners' returns for the taxable years 1979 through 1983. [10] The magistrate filed his Report and Recommendation that the summons be enforced on June 6, 1986. The district court filed its opinion adopting the magistrate's recommendation on July 17, 1986 and entered its judgment on July 23, 1986. Petitioner's appeal from the district court's ruling that he must produce the requested documents was dismissed as moot by the Fifth Circuit on April 27, 1987 after petitioner *667 produced the documents. Respondent issued his notice of deficiency for petitioners' 1979 taxable year on April 6, 1986. Petitioners timely filed their petition with this Court on June 9, 1986. Petitioners filed their Motion for Summary Judgment and respondent filed his Motion for Partial Summary Judgment on June 19, 1987. On June 30, 1987, respondent filed a Motion to Take Judicial Notice of the findings of fact and opinion of the district court in the summons enforcement proceeding. OPINION We first consider respondent's motion to take judicial notice pursuant to Rule 201, Federal Rules of Evidence, of (1) the Report and Recommendation of magistrate on Petition to Enforce Internal Revenue Summons filed June 6, 1986, (2) the opinion of the district court filed on July 17, 1986 and *668 the judgment filed on July 23, 1986 in the summons enforcement proceeding in the United States District Court, Western District of Louisiana, Lake Charles Division, and (3) the Motion to Dismiss the Appeal as Moot filed in the United States Court of Appeals for the Fifth Circuit on April 27, 1987. Respondent argues that although we are not bound by the district court's findings of fact under the doctrines of res judicata or collateral estoppel, we should nonetheless take judicial notice of them and follow them out of comity. Rule 201, Federal Rules of Evidence, provides in relevant part: Rule 201. Judicial Notice of Adjudicative Facts (a) Scope of rule. This rule governs only judicial notice of adjudicative facts. (b) Kinds of facts. A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.
We may take judicial notice of proceedings in this Court *669 as well as other courts. See Estate of Reis v. Commissioner,87 T.C. 1016, 1027 (1986). In the instant case, however, we cannot do so because the findings of fact made in the summons enforcement proceeding do not rise to the level of adjudicative facts. In this regard, our opinion in Estate of Reis v. Commissioner, supra, is dispositive. In Estate of Reis, respondent asked us to take judicial notice of specific findings of fact of the New York state courts in lengthy litigation involving parties in privity with the taxpayer. Although we took judicial notice of the existence of the New York state court opinions, we declined to take judicial notice of the specific findings of fact therein, explaining: Such findings do not satisfy the two tests of rule 201(b). They are not generally known to the public, nor are they so indisputable that their accuracy cannot reasonably be questioned. The mere fact that a court in one opinion makes findings of fact is not a basis for the same or another court in another proceeding to take judicial notice of those *670 findings and deem [Text Deleted by Court Emendation] them to be indisputably established for purposes of the pending litigation. * * *
Estate of Reis v. Commissioner,87 T.C. at 1028-1029. In the instant case, the specific findings of fact made by the magistrate and adopted by the district court are neither generally known to the public nor indisputably established. Thus, while we note the summons enforcement proceeding and opinion disposing of the parties' contentions, we decline to take judicial notice of the findings of fact made in that proceeding on which the opinion is based. We now turn to the substantive issues. Petitioners ask us to find as a matter of law that the notice of deficiency is invalid because the evidence upon which respondent based his deficiency determination was obtained from petitioner through conduct that violated the Internal Revenue Manual ("I.R.M." or "Manual") and constituted an unlawful and unreasonable search of petitioner in violation of his 4th and 5th Amendment rights. In the alternative petitioners argue that we should suppress the evidence obtained as a result of respondent's violation of the Manual. Respondent *671 moves for partial summary judgment that the notice of deficiency is valid. This Court generally will not "look behind" a notice of deficiency to examine the administrative proceedings or the propriety of respondent's motives leading to the deficiency determination. Vallone v. Commissioner,88 T.C. 794, 806 (1987); Jackson v. Commissioner,73 T.C. 394, 400 (1979). An exception to this rule exists where the taxpayer alleges that respondent's conduct in determining the deficiency constitutes a violation of his constitutional rights. Greenberg's Express, Inc. v. Commissioner,62 T.C. 324, 327 (1974). We will, therefore, consider the propriety of respondent's actions in his examination of petitioners' income tax returns for the taxable years 1979, 1980, 1981, 1982, and 1983. The Internal Revenue Manual provides that when an examiner discovers a firm indication of fraud, he must immediately suspend his examination and prepare a report referring *672 the case for possible criminal investigation. I.R.M. 4231, section 981. [11] The Manual does not define the term "firm indication of fraud" but provides guidelines to assist examiners. Internal Revenue Manual section 4565.21(1) provides: A firm indication of fraud must be distinguished from a first indication of fraud. A first indication of fraud can be described as a mere suspicion of fraud. Examiners are legally permitted and should endeavor to ask the taxpayer, the preparer, the representative, or any other involved party for an explanation of the "discrepancies" which are the basis of the examiners [sic] suspicion of fraud and any other question(s) which will resolve the of the taxpayer's intent. The determination of firm indication of fraud is a factual determination which can only be determined on a case by case basis. An examiner who is in doubt should consult with his/her group manager and/or Examination Fraud Coordinator to determine if the indicators of fraud are sufficiently developed.
In addition, I.R.M. 4231, section 981(2) contains the following directive: When examiners *673 have been alerted to the possibility of fraud, they must know at what point to suspend the examination and prepare a referral report. If they stop too soon all the information necessary may not have been developed for the Criminal Investigation function, to base a decision. The examiner may not be able to demonstrate that there is an actual statement resulting from the findings if they have not gathered sufficient facts or sought explanations which might account for the discrepancy. Or they may not have found sufficient evidence relating to intent.
The Manual also lists several so-called "badges" of fraud, including understatements of income, accounting irregularities, suspicious conduct of the taxpayer, and a pattern of underreporting of income over several years. I.R.M. 4231, section 940. Although the existence of one or more badges of fraud does not necessarily mean that the return is fraudulent, it should alert the examiner that more probing inquiry is warranted. I.R.M. 4231, section 940(3). On January 16, 1985, revenue agent Fox determined *674 that a firm indication of fraud existed for petitioners' 1981, 1982, and 1983 taxable years. He prepared a fraud referral report and submitted it to his group manager on January 28, 1985, anticipating that the case would be referred for criminal investigation. Pursuant to I.R.M. 4231, section 981, Fox did not inform Murray that he was preparing a referral report. Between January 16, 1985, when he concluded there was a firm indication of fraud, and January 28, 1985, when he submitted his referral report, Fox pressed his investigation of petitioners' 1981, 1982, and 1983 returns. On January 22, 1985, Fox received information from Murray concerning income unrelated to petitioner's dental practice pursuant to Fox's request of January 16, 1985. Fox also met with Murray on January 25, 1985 but did not receive any new information at that time. Fox had requested to meet with petitioner but he did not appear. After Fox's group chief approved Fox's referral report, Branch Chief Richard White reviewed the report and concluded that there was not a firm indication of fraud. Believing that an examination of prior years might produce an additional "badge" of fraud by establishing a pattern *675 of underreporting over more years, White returned the report to Fox with instructions to determine whether there was sufficient unreported income in prior years to examine the returns under the six-year statute of limitations of section 6501(e). Fox reviewed petitioners' 1979 and 1980 returns and discovered understatements of income for each year. He submitted another referral report encompassing the years 1979 through 1983 and White accepted it. The Criminal Investigation Division began an investigation against petitioner with respect to his taxable years 1980 through 1983 on or about April 5, 1985. Petitioner has at no time been under criminal investigation with respect to his 1979 taxable year, the year before the Court. The six-year statute of limitations on tax crimes in connection with the 1979 return (filed in 1980) expired in 1986. The six-year statute of limitations on tax crimes in connection with the 1980 return expired in 1987. Petitioners contend that Fox violated the Internal Revenue Manual by continuing his investigation of the taxable years 1981, 1982, and 1983 after determining that there was a firm indication of fraud. In addition, petitioners argue that *676 White violated the Manual by returning Fox's referral report for investigation of additional years despite "abundant and unequivocal indications of fraud" for 1981, 1982, and 1983. Petitioners argue that because respondent already had a firm indication of fraud for three years, that his only purpose in examining the taxable years 1979 and 1980 was to establish a stronger case for criminal prosecution. Because the evidence on which respondent's deficiency determination for the taxable year 1979, the year in issue, is based would not have been discovered had respondent's agents complied with the Manual, petitioner argues that the evidence must be suppressed or the notice of deficiency invalidated. Respondent contends that his agents' actions were in full compliance with the Manual and that even if they were not, the Manual does not confer any rights on or provide any remedies for petitioners. Absent a showing of bad faith, we will not substitute our judgment for that of respondent's agent in deciding if a firm indication of fraud exists. Groder v. United States,816 F.2d 139, 142-143 (4th Cir. 1987); *677 United States v. Matis,476 F. Supp. 1287, 1292-1293 (S.D.N.Y. 1979). Fox, however, knew that he would refer the case for criminal investigation and nonetheless continued to solicit information from petitioner while he was preparing his referral report. Fox had determined that a firm indication of fraud existed by January 16, 1985. Internal Revenue Manual 4231, section 981(1) provides that once an agent makes such a determination, he must immediately suspend his investigation. Although White returned Fox's report to him in February 1985, concluding that there was not yet a firm indication of fraud, until that point Fox should have suspended his investigation. The badges of fraud evident in the case at the time of Fox's referral report further suggest that White violated the Manual by returning Fox's report for investigation of prior years. White determined that there was not yet a firm indication of fraud in the face of clear evidence that petitioner had (1) significantly understated his income for each of three years, (2) deliberately maintained two inconsistent books of account for his dental practice both of which failed to report substantial cash receipts, *678 (3) knowingly concealed from his return preparer material facts necessary to a correct preparation of his Federal income tax returns for three years, and (4) lied to one of respondent's agents, a criminal act pursuant to section 7207, about his receipt of cash from patients. Given these facts, we believe that no reasonable person could conclude that a firm indication of fraud did not exist. [12] As of January 16, 1985, a firm indication of fraud existed for the taxable years 1981, 1982 and 1983, and White's referral of the case for further investigation of 1980 and 1979 was, at that time, for the sole purpose of strengthening the criminal case to be investigated. Respondent should have discontinued his civil audit at that time and referred the case to the Criminal Investigation Division. *679 We have concluded that respondent's agents violated the Manual by expanding their civil investigation of petitioner to include his 1979 and 1980 taxable years after they had found a firm indication of fraud for the taxable years 1981, 1982 and 1983. Next we must determine whether any grounds exist for petitioners' suggested remedy for this violation. Not all violations of an agency's internal procedures rise to the level of constitutional violations. United States v. Caceres,440 U.S. 741, 755-756 (1979); [13]Vallone v. Commissioner,88 T.C. at 807; Riland v. Commissioner,79 T.C. 185, 201 (1982). Courts have consistently refused to overturn agency actions because of a violation of a procedural rule when the violation inflicts no significant harm on the party entitled to observance of the rule. [14] See Martin v. F.A.A.,795 F.2d 995, 997 (Fed. Cir. 1986); Dodson v. National Transportation Safety Board,644 F.2d 647, 652 (7th Cir. 1981); E.E.O.C. v. Kimberly-Clark Corp.,511 F.2d 1352, 1361-1362 *680 (6th Cir.), cert. denied 423 U.S. 994 (1975). Cf. American Farm Lines v. Black Ball Freight Service,397 U.S. 532, 537-539 (1970). *681 Courts have frequently held that the Internal Revenue Manual is not for the protection of the taxpayers. Groder v. United States,816 F.2d at 142; United States v. Will,671 F.2d 963, 967 (6th Cir. 1982); United States v. Mapp,561 F.2d 685 (7th Cir. 1977); United States v. Lockyer,448 F.2d 417 (10th Cir. 1971); Vallone v. Commissioner,88 T.C. 794, 808 (1987). Its provisions are not required by the Constitution or by statute and govern only the internal affairs of the Internal Revenue Service. United States v. Caceres,440 U.S. 741, 751 (1979). As such, Manual requirements are merely directory and not mandatory and noncompliance does not render respondent's actions invalid. United States v. Horne,714 F.2d 206, 207 (1st Cir. 1983); Vallone v. Commissioner, supra.
In this case, moreover, the violation did not harm petitioner with respect to the year before the Court. *682 Section 6501(c)(1) provides that in the case of a false or fraudulent return, the tax may be assessed at any time. In this case, the information obtained for 1979 was used only to determine the deficiency and addition to tax for 1979. Fox's examination of petitioner's 1979 taxable year did not result in a referral for criminal prosecution. Institutionally, respondent's request for information was used solely for civil purposes, viz, to determine a deficiency and an addition to tax for fraud and, consequently, respondent's violation of the Manual was a harmless error. I.R.M. 4231, section 981 applies only when a criminal referral is contemplated. Respondent is fully authorized to investigate as much as necessary for civil purposes. Petitioners argue that Fox's actions constituted an unreasonable and unlawful search of petitioner in violation of his 4th and 5th Amendment rights. The evidence respondent obtained in violation of the Manual concerning petitioner's 1979 taxable year consisted of bank statements, bank deposit records, patient record cards and daily production and collection *683 sheets. Petitioner was not compelled to produce this evidence. Rather, Murray volunteered the information on petitioner's behalf. Consequently, respondent's violations of his administrative rules do not violate petitioners' constitutional rights unless petitioner's consent was vitiated through respondent's agent's fraud, deceit, trickery or affirmative misrepresentation. A consensual search is unreasonable under the 4th Amendment or violative of due process under the 5th Amendment if the consent was induced by fraud, deceit, trickery or misrepresentation by respondent's agents. United States v. Nuth,605 F.2d 229, 234 (6th Cir. 1979); United States v. Tweel,550 F.2d 297, 299 (5th Cir. 1977). Petitioner argues that his representative Murray continued to cooperate with Fox's examination after January 14, 1985, [15] after Murray concluded that Fox had had a firm indication of fraud, because Fox misrepresented to him that he was going to conclude the case as a civil examination. Petitioner further contends that by January 16, 1985 at the latest, the *684 evidence clearly established fraud for the years 1981, 1982, and 1983 and that respondent, therefore, in investigating the 1979 and 1980 returns in effect represented that no criminal referral would occur. An affirmative misrepresentation by respondent's agent that an investigation is routine when it is in fact a criminal investigation constitutes fraud, deceit, and trickery and, at least in the Fifth Circuit to which an appeal would lie in this case, requires the suppression of evidence. United States v. Nuth,605 F.2d at 234; United States v. Tweel,550 F.2d at 299. A failure to inform the taxpayer that criminal charges may result from a civil investigation, without more, however, is not an affirmative misrepresentation. The Fifth Circuit *685 has stated, United States v. Prudden,424 F.2d 1021, 1033 (5th Cir. 1970), cert. denied 400 U.S. 831 (1970): the mere failure of a revenue agent (be he regular or special) to warn the taxpayer that the investigation may result in criminal charges, absent any acts by the agent which materially misrepresent the nature of the inquiry, do not constitute fraud, deceit and trickery. Therefore, the record here must disclose some affirmative misrepresentation to establish the existence of fraud, and the showing must be clear and convincing. In a recent decision involving facts similar to this case, the Fifth Circuit, relying on United States v. Prudden, supra, found that respondent had not affirmatively misrepresented the nature of his investigation and upheld the district court's denial of a motion to suppress statements made in an interview with respondent's agents. United states v. Caldwell,820 F.2d 1395 (5th Cir. 1987). In that case respondent commenced an audit of Caldwell's 1979 and 1980 income tax returns following *686 a tip from a confidential informant to the Criminal Investigation Division. The Criminal Investigation Division was reluctant to open a criminal investigation without more substantial evidence of fraud and referred the case for audit by the Civil Examination Division. A revenue agent examined Caldwell's 1979 and 1980 returns and drafted a fraud referral report. After discussing the case with his group manager, however, the agent concluded that he did not yet have a firm indication of fraud and scheduled another conference with Caldwell. At his bribery trial, Caldwell sought to suppress statements made at that conference, claiming that the revenue agent had misrepresented that the examination was civil in nature when in fact it was a criminal investigation. The court held that Caldwell had not shown by clear and convincing evidence that the revenue agent interviewed Caldwell as part of an independent criminal investigation. See also Groder v. United States,816 F.2d 139 (4th Cir. 1987). While the facts of this case are more favorable to petitioner than the facts of Caldwell were to that taxpayer, we believe they do not amount to a misrepresentation by respondent *687 of the nature of his inquiry. Discerning whether an investigation will end solely as a civil audit or also result in a criminal investigation is difficult because the civil and criminal elements of fraud investigation are inherently intertwined. See United States v. LaSalle National Bank,437 U.S. 298 (1978). In LaSalle, the Supreme Court held an administrative summons issued before the case was referred to the Justice Department for criminal prosecution enforceable although respondent's agent had sought the summons solely to gather evidence for a criminal prosecution. The Court reasoned that the relevant inquiry concerned the motive of the Internal Revenue Service as an institution, and not that of an individual agent. Absent institutional bad faith, the fact that respondent may also be investigating possible criminal violations does not negate the existence of a civil purpose for an audit. Because of the interrelated nature of civil and criminal investigations prior to a Justice Department referral, the Court concluded that when it requested the administrative *688 summons, the Internal Revenue Service could not yet be considered to have abandoned the civil aspect of its investigation. The Court noted that "Because criminal and civil fraud liabilities are coterminus, the Service rarely will be found to have acted in bad faith by pursuing the former." The Court cautioned, however, that it would "not countenance delay in submitting a recommendation to the Justice Department when there is an institutional commitment to make the referral and the Service merely would like to gather additional evidence for the prosecution." United States v. LaSalle National Bank,437 U.S. at 316-317. Fox's failure to inform petitioner that he was eliciting information to decide whether a referral for criminal investigation was appropriate did not constitute an affirmative misrepresentation of the nature of his inquiry nor does it rise to the level of institutional bad faith. In fact, I.R.M. 4231, section 981 provides that an examiner should not inform the taxpayer that he is making a criminal referral. See also United States v. Prudden,424 F.2d at 1032. *689 White's returning Fox's referral report to him with instructions to determine whether the six-year statute of limitations of section 6501(e) was available for the taxable years 1979 and 1980 is a closer question. We have already found that White had a firm indication of fraud for three years and thus violated the Manual by returning the case to Fox for an examination of additional years. In deciding whether White's actions justify suppression of the information obtained, we must focus not solely on his intentions, but on those of the Internal Revenue Service as an institution. See United States v. LaSalle, supra.The touchstone of that inquiry is whether respondent had abandoned the civil aspect of his investigation. Although White intended that Fox better develop the criminal case, we cannot find that respondent had abandoned the civil aspect of his investigation. We, therefore, cannot find that respondent's actions constituted institutional bad faith. See United States v. LaSalle, supra.This is particularly true where there has been no referral for criminal prosecution; such is the case here. Because we have found that White's violation *690 of the Internal Revenue Manual did not harm petitioner and that respondent's agents did not violate petitioner's 4th or 5th Amendment rights, there are not grounds for suppressing the evidence obtained in violation of the Manual. Further, we hold that the notice of deficiency issued for petitioners' 1979 taxable year is valid. To reflect the foregoing, An appropriate order will be entered.
Footnotes
1. The parties do not agree on all material facts but have severed the issues presented here on a fully stipulated record. The issues are more properly treated as being submitted on the stipulations of the parties pursuant to Rule 122. ↩
2. All section references are to the Internal Revenue code of 1954, as amended. ↩
3. The DIF system is a computer program that the Internal Revenue Service uses to classify income tax returns according to their tax change potential. I.R.M. paragraph 4116. The Internal Revenue Service correlates the DIF score with the potential for tax change on audit. Internal Revenue Manual (Audit) section 4565.21 provides slightly different instructions for examiners to follow when they discover a firm indication of fraud. Rather than immediately suspending the examination, the examining agent need only do so at the earliest opportunity: Section 4565.21 (1) If, during an examination, an examiner discovers a firm indication of fraud on the part of the taxpayer, the tax return preparer, or both, the examiner shall suspend his/her activities at the earliest opportunity without disclosing to the taxpayer * * * the reason for such suspension. (See guidelines in Chapter (10)00 of Audit Techniques Handbook for Internal Revenue Agents, IRM 4231.) * * *
Although we would reach the same ultimate conclusion in this case applying either provision, we will rely on the Audit Techniques Handbook guidelines (I.R.M. 4231, section 981) because that section is more favorable to the taxpayer and because IRM 4565.21 specifically refers examiners to the Audit Techniques Handbook. [4]↩ Although only the taxable year 1979 is before the Court, the issues raised concern the conduct of the entire audit and we must, therefore, review the facts relating to all of the years under the audit. 6. Murray based his conclusion that Fox planned to conclude the examination as a civil case on his 27 years of experience with the Criminal Investigation Division of the Internal Revenue Service. ↩
7. Fox had asked to meet with petitioner, but petitioner did not attend the meeting. ↩
8. On the agreement of the parties, we have relied in making our findings of fact on testimony before a United States Magistrate in the summons enforcement proceeding. See infra. Although it is difficult to weigh the testimony of unobserved witnesses, we find that though Murray was quite familiar with audit procedures, much of his testimony was based on speculation. We thus accept Fox's statement of what occurred after the completion of the civil examination on March 7, 1985. Fox testified that in response to questioning from Murray, he told Murray that the case had to be reviewed by his superiors before any decisions could be made. Murray testified first that he only remembered Fox telling him that once the report came back from his superiors, he and Murray would sit down and agree or disagree. On recall after Fox had testified, Murray testified from notes that he claimed to have prepared after his March 7, 1985 meeting with Fox and which he had reviewed more carefully since his first testimony. The notes referred to statements by Fox that the case would have to go to the "review staff" in New Orleans. Murray apparently believed that the review staff reviewed only civil cases and assumed that review by the review staff would be the final step to completion of the investigation as a civil examination. The review staff is an independent section within the Examination Division which reviews certain civil cases and criminal cases after the criminal investigation has been completed. Fox denied ever stating that the case had to go to the review staff. ↩
9. See United States of America and Donald M. Barnes, Special Agent, Internal Revenue Service v. Stanley S. Levy,↩ Docket No. Misc. 86-19. 10. The parties have stipulated that if called to testify, those witnesses would give identical testimony under oath in these proceedings. They have also waived all hearsay objections to the introduction of the transcripts from the summons enforcement proceeding into evidence. We, therefore, admitted the transcript of that proceeding into evidence and have made our own findings of fact based on it. ↩
11. See note 5, supra.↩
12. We reject petitioners' argument that White had no discretion to determine whether there was a firm indication of fraud simply because the Manual provides that that decision is to be made by the revenue agent. See I.R.M. 4231, section 981(1) (examination should be suspended when the examiner discovers a firm indication of fraud). The same section also provides that the examiner's fraud referral report must be submitted to the Chief, Examinations Division, who in this case was White. As the Chief of the Examinations Division, White had to approve Fox's report before it could be forwarded to the Criminal Investigation Division. This step would be meaningless if White were bound by Fox's determination. Moreover, petitioners' interpretation of the Manual would create an unworkable situation in which respondent might be bound by the decisions of his low level employees. ↩
13. In Caceres, the taxpayer sought to have two tape recordings excluded from evidence at his criminal bribery trial on the ground that they were obtained in violation of the Internal Revenue Manual. The Supreme Court declined to apply the exclusionary rule to violations of rules that were not required by the Constitution or any statute and on which the defendant could not reasonably contend that he had relied. The Court explained that a "rigid application of an exclusionary rule to every regulatory violation could have a serious deterrent impact on the formulation of additional standards to govern prosecutorial and police procedures," and concluded:; In the long run, it is far better to have rules like those contained in the IRS Manual, and to tolerate occasional erroneous administration of the kind displayed by this record, than either to have no rules except those mandated by statute or to have them framed in a mere precatory form.
440 U.S. 741, 756 (1979). Caceres concerned a criminal prosecution in which the taxpayer sought to have certain evidence excluded because the Internal Revenue Service had violated its procedural rules and is not directly on point. In Caceres, however, the Court noted that "Even as a matter of administrative law * * * agencies are not required, at the risk of invalidation of their action, to follow all of their rules, even those properly classified as 'internal'." United States v. Caceres,440 U.S. at 754↩ n.18. 14. A violation of a substantive rule, in contrast, renders the agency action invalid. Martin v. F.A.A.,795 F.2d 995, 997↩ (Fed. Cir. 1986). 15. Murray concluded that Fox had a firm indication of fraud as of January 14, 1985, but Fox did not in fact reach that conclusion until January 16, 1985. We have found, in any case, that Fox violated the Internal Revenue Manual by continuing to solicit information from petitioner after January 16, 1985. ↩