**RUSSIAN RECOVERY FUND LTD., Russian Recovery Advisors, L.L.C., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 06–30 T.

United States Court of Federal Claims.

Dec. 14, 2009.

Loretta R. Richard, Boston, Massachusetts, for plaintiffs, with whom were B. John Williams, Jr., and Alan J.J. Swirski, Washington, DC.

Robert J. Higgins, Tax Division, Department of Justice, Washington, DC, for defendant, with whom were John DiCicco, Acting Assistant Attorney General, Steven I. Frahm, Chief, Court of Federal Claims Section, and Bart D. Jefress, Trial Attorney, all on behalf of the Department of Justice.

## OPINION

BRUGGINK, Judge.

This Tax Equity and Fiscal Responsibility Act ("TEFRA") action is a petition for readjustment of partnership items brought under 26 U.S.C. § 6226(a) (1986)[1] by Russian Recovery Advisors, LLC. ("RRA" or "plaintiff"), as the tax matters partner for Russian Recovery Fund, LTD ("RRF"). Plaintiff alleges that the Internal Revenue Service ("IRS") erred in its October 14, 2005 Notice of Final Partnership Administrative Adjustment for the tax year ending December 31, 2000 ("2000 FPAA"). Plaintiff contends that the 2000 FPAA was issued outside the limitations period and is invalid.

Currently pending is defendant's motion to dismiss pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims ("RCFC"). Defendant argues that the deposit RRA made pursuant to Section

6226(e) was insufficient to maintain jurisdiction. Plaintiff maintains that its deposit was sufficient, or, in the alternative, that under Section 6226(e)(1) it acted in good faith in attempting to satisfy the jurisdictional requirement. The matter is fully briefed. Oral argument was heard on October 6, 2009. For the reasons discussed below, we agree with defendant that plaintiff's deposit was insufficient. We conclude, however, that we cannot dismiss the action without giving plaintiff the opportunity to show that it made a good faith attempt to calculate the deposit.

## BACKGROUND[2]

RRF is a limited partnership of ten partners that specializes in distressed asset transactions. Two of its partners are RRA and FFIP, LP ("FFIP").[3] RRA and FFIP are also partnerships. In turn, Bracebridge Capital, LLC ("Bracebridge") is a partner of both RRA and FFIP. The parties agree that the IRS disregards RRA for tax purposes and that Bracebridge is the relevant filing partner for this TEFRA proceeding. Both Bracebridge and RRA filed a petition to challenge the FPAA due to uncertainty over whether a disregarded entity is a proper tax matters partner. The complaints are identical and we consolidated the actions. Bracebridge has four partners—all individuals. Nancy Zimmerman ("Ms.Zimmerman") is one of them. Ms. Zimmerman and two of Bracebridge's other partners are also partners of FFIP. Ms. Zimmerman and one other Bracebridge partner are also partners of RRF. A diagram[4] setting out the relevant entities follows:

1. All subsequent references to the United States Code are to Title 26 and

2. All facts are taken from defendant's proposed findings of uncontroverted fact and plaintiff's response. All dollar figures represent approximations.

3. There are other partners but they are not germane to this action.

4. For our purposes, the asterisks in the graphic may be ignored; the dashed border around RRA illustrates the disregarded status of RRA.

During the 2000 tax year, RRF allocated $50 million in Section 988 foreign currency losses ("the losses" or "Section 988 losses") and $3.5 million in Section 988 gains to FFIP—a net of over $46 million in Section 988 losses according to Schedule K–1 of RRF's partnership return. FFIP then allocated $7.3 million of those Section 988 losses to its partners, including $85,000 to Bracebridge, in 2000. In 2001, FFIP released $27 million of RRF's 2000 Section 988 losses to its partners, including $1.4 million to Bracebridge and $19 million to Ms. Zimmerman.

On October 14, 2005, the IRS issued the 2000 FPAA to RRF denying all the Section 988 losses RRF allocated to FFIP. Bracebridge filed a petition within the ninety day window and deposited $50,000 pursuant to Section 6226(e)(1), which plaintiff alleges satisfies the jurisdictional deposit requirement. Defendant alleges that the jurisdictional deposit is insufficient and that we must dismiss the action or that plaintiff must demonstrate that the indirect partners exercised good faith in making the deposit. We notified the parties that we would not, for the moment, consider the issue of good faith. Conse-

quently, we only address the sufficiency of the deposit.

## DISCUSSION

The Internal Revenue Code grants this court jurisdiction over petitions for readjustment of partnership items brought by either the tax matters partner or, if the tax matters partner does not file within 90 days, any other partner. § 6226(a). To perfect jurisdiction:

[T]he partner filing the petition deposits with the Secretary, on or before the day the petition is filed, the amount by which the tax liability of the partner would be increased if the treatment of partnership items on the partner's return were made consistent with the treatment of partnership items on the partnership return, as adjusted by the final partnership administrative adjustment.

§ 6226(e)(1).

Partnerships, of course, are not tax-paying entities. If the petitioning partner is an individual or a corporation, then the above section would appear to mean that the deposit required would be the amount that the tax-paying entity's liability increased, assuming the FPAA stood. As plaintiff pointed out in oral argument through one of its illustrative demonstratives, if the filing partner had been a tax paying entity, for example a corporation, then the inquiry would stop at that level. And if, for example, that particular entity had not received any of the Section 988 losses, then the deposit required would appear to be zero.

Those are not the present facts, though, and defendant's motion raises the question of how to calculate the deposit if the petitioning partner is itself a partnership, and hence not a tax-paying entity. The IRS has, by regulation, attempted to answer this question:

The jurisdictional amount that the filing partner (or ... *in the case of a petition filed by a pass-thru partner, each indirect partner holding an interest through the pass-thru partner*) shall deposit is the amount by which the tax liability of the partner would be increased if the treatment of the partnership items on the partner's return were made consistent with the

treatment of partnership items on the partnership return, as adjusted by the notice of final partnership administrative adjustment.

Treas. Reg. § 301.6226(e)1 (a)(1) (2001) (emphasis added). The parties interpret this regulation differently and the first question we must address is which party's view is correct.

Defendant views the italicized parenthetical language above as directing the substitution of the indirect partner for the filing partner. According to the government, the regulation makes clear that, when the petitioning partner is a partnership, the term "tax liability of the partner" means the liabilities of all of the entities downstream from the petitioning partner. Insofar as the present entities are concerned, defendant would apply the regulation as follows:

The jurisdictional amount that the filing partner (or ... in the case of a petition filed by a pass-thru partner [**Bracebridge**], each indirect partner [**Ms. Zimmerman et al.**] holding an interest through the passthru partner [**Bracebridge**] ) shall deposit is the amount by which the tax liability of the partner [**Ms. Zimmerman et al.**] would be increased if the treatment of the partnership [**RRF's**] items on the partner's [**Ms. Zimmerman et al.**] return were made consistent with the treatment of partnership items on the partnership return, as adjusted by the notice of final partnership administrative adjustment.

Treas. Reg. § 301.6226(e)1(a)(1).

Under this view of the regulation, because Bracebridge is a pass-thru entity, each person holding an interest in RRF through Bracebridge must make an appropriate deposit (even if the losses did not actually pass-thru Bracebridge). Ms. Zimmerman and all of her fellow Bracebridge partners would have to recalculate their individual returns as if all losses flowing from RRF were reversed, including those that passed through FFIP in addition to the smaller amounts passing through Bracebridge. Under this construction, Ms. Zimmerman's contribution to the deposit calculation alone would be over $8 million, because it would include FFIP's 2001

release of $19 million of RRF's 2000 Section 988 losses.

The critical step in defendant's interpretation is substituting the "filing partner" with "indirect partner" consistently. In other words, once Ms. Zimmerman and other indirect partners are substituted for the filing partner, the focus of the calculation is on the ultimate impact to their tax returns of the reversal of RRF's Section 988 losses for the partnership's 2000 tax year.

Once the "who" is identified for purposes of calculating the deposit, defendant contends that the deposit calculation considers all of the gains and losses flowing from the parent partnership, irrespective of whether the losses were received in more than one year and irrespective of whether they were received through different pass-thru entities. In this case, for example, defendant submits that the implications to Ms. Zimmerman would have to be calculated in full. In other words, Bracebridge's deposit must reflect a reversal of RRF's Section 988 losses Ms. Zimmerman and others received both through Bracebridge and FFIP, and for both the 2000 and 2001 distributions.

What this would mean here is that once it is determined that Ms. Zimmerman, for example, is the relevant "partner," [5] then all of the consequences to her of a reversal of the FPAA must be considered. Meaning, the fact that most of her losses flowed through entities other than Bracebridge becomes irrelevant. They are all included because "[her] tax liability ... would be increased if the treatment of the partnership items on [her] return were made consistent with the treatment of partnership items on the partnership return...." Treas. Reg. § 301.6226(e)–1(a)(1). Because Ms. Zimmerman received the bulk of RRF's losses through FFIP, and because FFIP deferred some of RRF's 2000 losses to 2001, the deposit would be $8,555,578.[6]

Plaintiff reads the regulation differently. Applying plaintiff's preferred interpretation to the facts at hand results in the following:

The jurisdictional amount that the filing partner (or ... in the case of a petition filed by a pass-thru partner [**Bracebridge**], each indirect partner [**Ms. Zimmerman**] holding an interest through the pass-thru partner [**Bracebridge**] ) shall deposit is the amount by which the tax liability of the partner [**Ms. Zimmerman**] would be increased if the treatment of the partnership [**RRF's**] items on the partner's [**Bracebridge**] return were made consistent with the treatment of partnership items on the partnership return, as adjusted by the notice of final partnership administrative adjustment.

Treas. Reg. § 301.6226(e)–1(a)(1). As can be seen, the critical difference between defendant's and plaintiff's interpretations comes at the final name insertion: Ms. Zimmerman for defendant, and Bracebridge for plaintiff. Plaintiff substitutes indirect partner for the term "partner" on line six, but then on line eight substitutes the pass-thru partner for the same term.

Plaintiff's construction of the regulation begins in the same way as defendant's. It agrees that the phrase, "the tax liability of the partner," refers to Ms. Zimmerman as the indirect partner. The calculation then assumes, however, that she steps into the shoes of the filing partner, Bracebridge, in considering the consequences of the reversal of the FPAA. For that reason, only the amount of losses flowing through Bracebridge are hypothetically reversed in calculating the deposit. Plaintiff's interpretation thus calls for two different uses of the term "partner" in Section 301.6226(e)–1(a)(1). The first time it references the ultimate indirect partners, Ms. Zimmerman et al. The second time it refers to Bracebridge as the de facto filing partner.

Under plaintiff's interpretation, therefore, the indirect partners stand in the shoes of the pass-thru partner, Bracebridge, and the

---

**5.** Other entities divided the losses that passed through Bracebridge. We refer only to Ms. Zimmerman as illustrative of all the other tax paying entities.

**6.** The parties stipulated that, if defendant's position is correct, this is the amount that would be deposited.

deposit calculation is limited to amounts flowing through Bracebridge, albeit via FFIP. Ms. Zimmerman and others received only $85,000 through that channel. The bulk of the losses came to them from FFIP directly, or through other entities, and not from FFIP via Bracebridge. As we explain further below, we agree with defendant's interpretation.

Assuming defendant is correct in its construction of the regulation, the second issue which arises is whether the regulation is consistent with the statute? Plaintiff contends it is not.

Finally, assuming defendant's interpretation to be correct, and assuming that interpretation can be squared with the statute, an additional issue arises in implementing the statute's mandate to make Ms. Zimmerman's return consistent with RRF's. Of what consequence is FFIP's suspending a portion of the Section 988 losses for release in 2001? In other words, if, as in the present case, an intermediary pass-thru partner other than the filing partner (FFIP) defers some of the disallowed losses to a later tax year for one of the ultimate recipients (Ms. Zimmerman), are all the tax consequences to that recipient brought into consideration? Defendant contends that they are; plaintiff disagrees.

### A. Construction of the Regulation

■ To return to the opening inquiry— how to construe the regulation—we agree with defendant's interpretation. We reiterate, applying the regulation in a way that does no violence to the logical flow of the entities referred to would yield the following, insofar as the present case is concerned: The jurisdictional amount that each indirect partner (Ms. Zimmerman) holding an interest through the pass-thru partner (Bracebridge) shall deposit is the amount by which the tax liability of the partner (Ms. Zimmerman) would be increased if the treatment of the partnership (RRF's) items on the partner's (Ms. Zimmerman) return were made consistent with the treatment of partnership items on the partnership return, as adjusted by the notice of final partnership administrative adjustment.

Unlike plaintiff's construction, this reading involves no shifting application of the term "partner." Once Ms. Zimmerman is identified as the indirect partner and thus the ultimate tax paying entity, she is substituted for the filing partner and holds that position throughout. Eliminating the descriptive language leaves the following: the jurisdictional amount that Ms. Zimmerman shall deposit is the amount by which her tax liability would be increased if RRF's items on Ms. Zimmerman's return were made consistent with the treatment of partnership items on RRF's return, as adjusted by the notice of final partnership administrative adjustment.

Keeping the indirect partner as the focus of the regulation makes sense. The regulation uses the phrase, "tax liability of the partner would be increased." Treas. Reg. § 301.6226(e)–1(a)(1). Pass-thru entities have no tax liability. Therefore the first use of the singular "partner" plainly refers to the indirect partner. There is no reason that the next use of the term "partner" should carry a different meaning.

■ In deciding between the parties' competing views of the regulation, an agency's interpretation of its own regulation is entitled to a level of deference even "broader than deference to the agency's construction of a statute, because in the latter case the agency is addressing Congress's intentions, while in the former it is addressing its own." *Cathedral Candle Co. v. U.S. Int'l Trade Comm'n*, 400 F.3d 1352, 1363–64 (Fed.Cir.2005). The IRS furnished its interpretation of the regulation when it was published. That interpretation mirrors defendant's:

> The indirect partners holding an interest in the partnership through the pass-thru partner must deposit the aggregate amount by which their tax liabilities would be increased if the treatment of partnership items on the partners' returns were made consistent with the treatment of partnership items on the partnership return.

66 Fed.Reg. 50,541 (Oct. 4, 2001) (emphasis added). This explanation makes clear the agency's view that the term "partner" in both instances refers to the indirect partners and that all of the potential impact on their tax returns is taken into consideration.

Nor does this interpretation run afoul of the limits on the court's jurisdiction in a TEFRA partnership proceeding. Plaintiff contends that because these Section 988 losses, in their percolation to Ms. Zimmerman's tax return, have become partnership items of intermediary pass-thru entities, such as FFIP, the deposit calculation cannot be made without reviewing the propriety of FFIP partnership items. As this is a proceeding with respect to RRF's return, the court admittedly does not have jurisdiction to determine FFIP partnership items.

 Nevertheless, the process of calculating the necessary deposit will not necessitate a determination of any partnership items on FFIP's return. The indirect partners' deposit calculation must assume the elimination by the FPAA of Section 988 losses as they flow through intermediate entities. The fact that those changes have potential consequences to FFIP and other pass-through entities does not bar consideration of the ultimate consequences to Ms. Zimmerman's return. Section 6231(a)(6) makes clear that, "[a]ll adjustments required to apply the results of a proceeding with respect to a partnership under this subchapter to an indirect partner shall be treated as computational adjustments." The calculation which has to be undertaken at this point simply uses FFIP's reported figures, removes the losses, and makes adjustments accordingly. Cf. Olson v. United States, 172 F.3d 1311, 1318 (Fed.Cir.1999) ("[T]he assessments disputed here were mere 'computational adjustments' requiring no non-computational, factual determinations at the partner level . . . .").

Assuming the IRS is successful in defending the FPAA, it will be necessary to disallow the losses at the source (RRF) and trace them through pass-thru entities—even though those losses may have become "partnership items" of other entities. See § 6231(a)(6). Likewise, the plaintiff's deposit calculation must be based on the same disallowances.

Plaintiff finally counters that defendant's interpretation is impractical to satisfy and unnecessary; it would require filing partners to assemble voluminous and sensitive tax information regarding potentially numerous indirect partners. Moreover, plaintiff contends, if the IRS is concerned about forcing these indirect partners to implement the FPAA, it already has a simple mechanism to ensure full payment of taxes from indirect partners, namely, individual assessment. While defendant's interpretation may be more difficult to administer, it is not this court's role to evaluate the wisdom of the regulation. Nor should our interpretation be different merely because the IRS has alternate mechanisms to ensure payment.

In sum, the regulation is unambiguous and we interpret it consistently with the interpretation advanced by the government: all indirect partners receiving any losses through the filing partner, Bracebridge, must account for all the effects of the FPAA, even if they received losses from other pass-thru entities.

## B. The Regulation and the Statute

 The next inquiry is whether the regulation impermissibly conflicts with Section 6226(e). Plaintiff contends that it does. It argues that the regulation improperly rests on a faulty assumption that Congress created a full-payment of tax regime in Section 6226.[7] It contends that, to the contrary, TEFRA and Section 6226(e) create a deposit regime focusing only on the liability of the filing partner—not multiple partners or total tax liability under the FPAA. Furthermore, plaintiff continues, Congress could have created a full-pay regime by making it clearer that the entire affected tax liability should be deposited. Instead, Congress created a depository regime in which the filing partner hypothetically may have to pay no deposit.[8]

It is certainly true that, even under the regulation, it is possible to hypothesize cir-

---

7. The Court of Federal Claims and the United States District Courts generally require the full pre-payment of tax liability in refund cases. See, e.g., Shore v. United States, 9 F.3d 1524, 1526–28 (Fed.Cir.1993).

8. For example, if a petitioning partner filed under Section 6226(a) and received no FPAA distributions, then Section 6226(e) would not require a deposit. the Internal Revenue Code of 1986 ("the Code").

cumstances in which no deposit, or less than a full deposit, would be required—if, for example, the tax matters filing partner was a tax paying entity which received no distribution from the parent partnership. We therefore assign no weight to defendant's contention that TEFRA proceedings here should be presumed to be "full pay."

But that does not mean the regulation, because it contemplates full pay in the present circumstances, is inconsistent with the statute. If, as we conclude above, the regulation calls for the substitution of indirect partners for the filing partner, then the question is whether full pay in the present instance is inconsistent with the statute. We hardly think so. Section 6226(e) imposes the deposit requirement as a jurisdictional prerequisite. Plainly, the possibility of full payment is implicit in the language of the code provision. It is easy to hypothesize a situation in which the filing partner would be a tax paying entity and could have received all or a substantial portion of the challenged losses. There is no thus necessary inconsistency between the regulation and the statute.

## C. FFIP's Suspension of the Section 988 Losses Until 2001

With respect to whether the deposit implicates multiple years of the indirect partner's returns, we find the decision in *Kislev Partners, L.P. ex rel. Bahar v. United States* to be persuasive. In *Kislev,* the indirect partner challenged a 2002 FPAA in which the IRS disallowed $140 million in Section 988 losses. 84 Fed.Cl. 385, 387–89 (Fed.Cl.2008). The indirect partner calculated the deposit only from the 2002 tax year, but the partnership carried the losses over and released them in 2003, 2004, and 2005. The indirect partner based his calculation on the singular "return" used in Section 6226(e) and argued that the court could not consider other years. The court reasoned that "tax liability is typically calculated on a multi-year basis" and that the "overarching statutory requirement [of Section 6226(e) ] is that total 'tax liability' be deposited as a jurisdictional prerequisite to maintaining suit in this forum." *Id.* at 388; *see also Schumacher Trading Partners II v. United States,* 72 Fed.Cl. 95, 100 (2006). The court held, consequently, "that 'tax lia-

bility' for the purposes of section 6226(e)(1)'s jurisdictional deposit should be calculated over multiple years...." *Id.* at 389.

We note as well that, in determining the meaning of any Act of Congress, "unless the context indicates otherwise, words importing the singular include and apply to several persons, parties, or things." 1 U.S.C. § 1 (2006). In conclusion, we agree with *Kislev* and the defendant that the total tax liability depository requirement trumps the singular "return." *Kislev,* 84 Fed.Cl. at 388. Moreover, a voluntary election to defer losses to subsequent years should not control the deposit amount. Allowing an entity to do so would permit it to assure itself of a deposit-free chance to litigate by allocating the loss entirely to other years.

■ In sum, to invoke this court's jurisdiction under Section 6226(e)(1), when a pass-thru partner files a readjustment petition, the indirect partners of the pass-thru entity must include their increased tax liability for all years and amounts by which their individual returns are affected by the FPAA.

## CONCLUSION

We agree with defendant that plaintiff's deposit was insufficient. The action will not be dismissed, however, without giving plaintiff the opportunity to show that it made a good faith attempt to calculate the deposit. The parties are directed to consult and prepare a joint status report outlining their positions with respect to resolving the question of whether plaintiff's deposit was made in good faith. The status report shall be filed on or before January 22, 2010.