T.C. Memo. 2015-192

UNITED STATES TAX COURT

AMERICAN MILLING, LP, UN LIMITED, TAX MATTERS PARTNER,
Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 8438-13.                         Filed September 28, 2015.

Anthony J. Rollins and John Tyler, for petitioner.

John Aletta, Debra L. Reale, and John W. Stevens, for respondent.

MEMORANDUM OPINION

MARVEL, Judge:  Respondent issued a notice of final partnership

administrative adjustment (FPAA) pursuant to section 6223[1] to UN Limited, the

tax matters partner (TMP) of American Milling, LP (American Milling), for 2000,

[1]Unless otherwise indicated, all section references are to the Internal
Revenue Code (Code) in effect for the years at issue.

[*2] 2001, 2002, and 2003 (Milling FPAA). Respondent made adjustments to the income, expense, and deduction items that American Milling reported on its 2000, 2001, 2002, and 2003 Federal income tax returns. Petitioner, its TMP, timely filed a petition contesting respondent's adjustments. When the petition was filed American Milling had its principal place of business in Illinois. This matter is before the Court on petitioner's motion to dismiss for lack of jurisdiction.

## Background

### I. Son-of-BOSS Transactions

In 1998 David Jump engaged in a series of transactions constituting a Son-of-BOSS tax shelter.[2] To this end, Mr. Jump formed two single-member limited

---

[2]A Son-of-BOSS transaction can be summarized as follows:

a variation of a slightly older alleged tax shelter known as BOSS, an acronym for "bond and options sales strategy." There are a number of different types of Son-of-BOSS transactions, but what they all have in common is the transfer of assets encumbered by significant liabilities to a partnership, with the goal of increasing basis in that partnership. The liabilities are usually obligations to buy securities, and typically are not completely fixed at the time of transfer. This may let the partnership treat the liabilities as uncertain, which may let the partnership ignore them in computing basis. If so, the result is that the partners will have a basis in the partnership so great as to provide for large--but not out-of-pocket--losses on their individual tax returns. * * *

Kligfeld Holdings v. Commissioner, 128 T.C. 192, 194 (2007).

[*3] liability companies:  Gateway Grain, LLC (Gateway Grain), and Omaha Pump Co., LLC (Omaha Pump).[3]  Gateway Grain and Omaha Pump engaged in short sales of U.S. Treasury notes resulting in proceeds in excess of $30 million. They then transferred the short sale proceeds and the related obligation to close the transactions to American Boat Co., LLC (American Boat).[4]  Around the same time American Milling transferred 18 tugboats to American Boat.  Under section 723, American Boat took bases in the tugboats (inside basis) equal to American Milling's bases in the tugboats before the contribution.  Likewise, under section 722, American Milling's initial basis in its American Boat partnership interest (outside basis) was equal to its bases in the tugboats before the contribution.

American Boat asserted that the contribution of the short sale proceeds increased the contributing partners' outside basis by more than $30 million, but the obligation to close the short sales was not a liability for purposes of section

---

[3]Mr. Jump and the Jump Family Trust (Jump Trust), a grantor trust, owned Gateway Grain and Omaha Pump, respectively.  Gateway Grain and Omaha Pump were disregarded entities for Federal tax purposes.  See secs. 301.7701-2(a), 301.7701-3(a) and (b)(1), Proced. & Admin. Regs.

[4]Because Gateway Grain, Omaha Pump, and the Jump Trust were disregarded entities for Federal tax purposes, Mr. Jump was treated as contributing the short sale proceeds and related obligation to close the short sales to American Boat.  See sec. 671; sec. 301.7701-2(c)(2), Proced. & Admin. Regs.

[*4] 752 and therefore had no effect on outside basis. The result was a large, artificial increase in outside basis.

On December 31, 1998, after closing the short sale transactions, Mr. Jump and the Jump Trust (through Gateway Grain and Omaha Pump) transferred their American Boat partnership interests to American Milling. Consequently, under section 708(b)(1), American Boat's partnership status terminated,[5] triggering a deemed distribution of American Boat's assets. See, e.g., Palm Canyon X Invs., LLC v. Commissioner, T.C. Memo. 2009-288; Rev. Rul. 99-6, 1999-1 C.B. 432. American Milling claimed a basis in the assets of American Boat (i.e., the tugboats) equal to the legitimate bases of the tugboats plus the inflated basis claimed from the short sale proceeds.

## II.    The American Boat FPAA

American Boat filed a Form 1065, U.S. Partnership Return of Income, for 1998. Respondent issued an FPAA to American Milling, the TMP of American Boat, for 1998 (American Boat FPAA). In the American Boat FPAA respondent determined, among other things, that American Boat was a sham partnership, the

---

[5]American Boat became a single-member limited liability company, causing it to be disregarded as an entity separate from its owner for Federal income tax purposes, absent an election to be classified as a corporation. See secs. 301.7701-2(a), 301.7701-3(a) and (b)(1), Proced. & Admin. Regs.

[*5] Son-of-BOSS transactions lacked economic substance, American Boat should be disregarded for tax purposes, and the short sale obligations were liabilities for purposes of section 752.  Respondent made adjustments to American Boat's ordinary income, capital contributions, outside basis, portfolio income, and investment income.

III.    American Boat FPAA Litigation

American Milling contested the adjustments in the American Boat FPAA in the U.S. District Court for the Southern District of Illinois.  Am. Boat Co., LLC v. United States, No. 3:06-CV-00788-GPM-CJP (S.D. Ill. Nov. 20, 2008), aff'd, 583 F.3d 471 (7th Cir. 2009).  In doing so American Milling made a jurisdictional deposit equal to the amount of tax due pursuant to section 6226(e)(1).[6]  Because American Milling was a passthrough entity, respondent calculated the amount of

---

[6]The amount of the TEFRA jurisdictional deposit required to commence a case in Federal court has split the Court of Federal Claims (the only court that appears to have addressed the issue).  In short, one judge has held that a partner contesting an FPAA needs to deposit only the amount of the increase in his tax liability for the year of the FPAA, see Prestop Holdings, LLC v. United States, 96 Fed. Cl. 244 (2010), while two other judges have held that the required deposit includes all increases in the petitioning partner's tax liabilities that arise from adjustments made in the FPAA even if the tax is payable in years after the year the FPAA is issued, see Russian Recovery Fund, Ltd. v. United States, 90 Fed. Cl. 698 (2009); Kislev Partners, L.P. ex rel. Bahar v. United States, 84 Fed. Cl. 385 (2008).  Respondent agreed with the latter view for purposes of calculating Mr. Jump's jurisdictional deposit.

**[*6]** the deposit by determining the increase in income tax for the ultimate taxpayer--in this case Mr. Jump. Respondent included in this calculation all adjustments flowing from the American Boat FPAA for 2000 through 2003 including, among other things, the disallowance of American Milling's deduction for legal fees for 2000 that flowed through to Mr. Jump. American Milling, through Mr. Jump, paid $1,260,544 as a jurisdictional deposit.[7]

The District Court held a three-day bench trial in the American Boat case. At trial the Government introduced evidence regarding the inflated bases that American Boat had claimed in the tugboats and American Boat's legitimate bases in the tugboats. The Government also introduced evidence of the inflated depreciation deductions that American Milling had claimed with respect to the tugboats for 2000 through 2003 and the inflated capital loss that American Milling had claimed on the sale of some of the tugboats. These inflated depreciation deductions and inflated capital losses mirror the adjustments respondent made in the Milling FPAA.

On the third day of trial the Government moved for judgment as a matter of law on the following three issues: (1) that the short sale obligations were

---

[7]This payment is treated as a deposit--not a payment of tax--for all purposes except the calculation of interest. See sec. 6226(e)(3); sec. 301.6226(e)-1(b) and (c), Proced. & Admin. Regs.

**[\*7]** liabilities for purpose of section 752; (2) that the Son-of-BOSS transactions lacked economic substance; and (3) that the Son-of-BOSS transactions lacked a business purpose. The District Court, ruling from the bench pursuant to rule 52 of the Federal Rules of Civil Procedure, granted the Government's motion for judgment as a matter of law with respect to the first two issues.[8] The District Court denied the Government's motion with respect to business purpose. At the conclusion of trial the District Court found that American Boat had reasonable cause for inflating the bases of the tugboats and therefore no section 6662(a)

---

[8]The parties disagree on the District Court's holding in the American Boat case. Respondent contends that the District Court did not determine that American Boat was a sham partnership and thus he could not rely solely on the District Court proceeding to determine that American Milling lacked any basis in American Boat. Petitioner, on the other hand, contends that the District Court held that the Son-of-BOSS transactions lacked economic substance and were sham transactions and that respondent should have assessed Mr. Jump for the liabilities flowing from the American Boat FPAA directly following the District Court proceeding. Because the parties dispute the holding and effect of the District Court proceeding, we examine the record in the District Court proceeding and take judicial notice of the record as appropriate.

Generally, under Fed. R. Evid. 201(b), an adjudicative fact can be judicially noticed only if it is (1) generally known within the trial court's territorial jurisdiction or (2) capable of accurate and ready determination by sources whose accuracy cannot reasonably be questioned. See Estate of Reis v. Commissioner, 87 T.C. 1016, 1026 (1986). We may take judicial notice on our own, and we may do so at any stage of the proceeding. See Fed. R. Evid. 201(c) and (d). We may take judicial notice of the text of judicial opinions and orders and of court filings to determine what issues the other court decided. See Estate of Reis v. Commissioner, 87 T.C. at 1027.

[*8] accuracy-related penalty applied. The District Court did not make a specific finding that American Boat was a sham and did not determine American Boat's legitimate bases in the tugboats.[9] Furthermore, although respondent determined in the American Boat FPAA that American Milling's outside basis in American Boat was a partnership item of American Boat,[10] the District Court did not make a specific finding with respect to American Milling's outside basis in American Boat.

## IV. Milling FPAA

Respondent did not directly assess against Mr. Jump any tax deficiency for 1998 resulting from the American Boat proceeding.[11] Instead, on January 18, 2013, respondent mailed the Milling FPAA to petitioner. Respondent determined

---

[9]The Government appealed the District Court's finding with respect to reasonable cause and the sec. 6662(a) accuracy-related penalty. American Boat did not appeal the District Court's holding that the Son-of-BOSS transactions lacked economic substance or that the short-sale obligations were liabilities for purposes of sec. 752. The Court of Appeals for the Seventh Circuit affirmed the District Court's rejection of the accuracy-related penalty. Am. Boat Co., LLC v. United States, 583 F.3d 471, 477-478 (7th Cir. 2009).

[10]Respondent now contends that American Milling's outside basis in American Boat is not a partnership item of American Boat but instead is an affected item requiring partner-level determinations at the American Milling level.

[11]After mailing the Milling FPAA to petitioner, respondent made "protective assessments against Mr. Jump by disallowing the inflated bases in the tugboats and claimed legal fees" resulting from the Son-of-BOSS transactions.

[*9] that American Milling had:  (1) claimed inflated depreciation deductions for 2000 through 2003 because of inflated bases in the tugboats; (2) claimed an inflated capital loss for 2002 resulting from the sale of some of the tugboats; and (3) erroneously claimed a deduction for 2000 of $300,000 for legal fees incurred in connection with the Son-of-BOSS transactions.

The Milling FPAA includes both numerical adjustments, which are set forth in a schedule of adjustments, and the narrative explanation of items.  The explanation of items is captioned "Affected Item Notice Final Partnership Administrative Adjustments".[12]  It states that as a result of the partnership item determinations made in the American Boat FPAA and the District Court case "all contributions, distributions, and any other transactions that American Milling * * * purportedly engaged in with American Boat * * * are disregarded for federal income tax purposes.  The results of the [American Boat] partnership item

_____

[12]Petitioner contends that the caption designating the explanation of items as an "Affected Item Notice Final Partnership Administrative Adjustments" supports a finding that the adjustments in the Milling FPAA are merely computational.  However, the first page of the Milling FPAA is captioned "Notice of Final Partnership Administrative Adjustment", which signifies that the Milling FPAA adjusts partnership items of American Milling.  The caption on the explanation of items does not affect our jurisdiction over the Milling FPAA.  See, e.g., Clovis I v. Commissioner, 88 T.C. 980, 982 (1987) ("Because of the similar functions of the FPAA and the statutory notice of deficiency, we are convinced that the long established principle applicable to notices of deficiency, viz, that no particular form is necessary, should apply with equal force to a[n] FPAA.").

[*10] determinations include but are not limited to reducing the basis of assets distributed to American Milling * * * by American Boat * * * by $31,255,986". The explanation of items further states that the Milling FPAA adjusts American Milling's claimed depreciation deductions and capital loss by reducing the bases of the tugboats by $31,255,986. Finally, the explanation of items states that American Milling's deduction of $300,000 for legal fees is disallowed because American Milling "has not established that such expenses were incurred or, if incurred, allowable under any provision of the * * * [Code]".

Discussion

## I.    Introduction

Partnerships do not pay Federal income tax, see sec. 701, but they are required to file annual information returns reporting their partners' distributive shares of income, gain, loss, deductions, and credits, see sec. 6031. Under the unified partnership audit and litigation procedures of the Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA), Pub. L. No. 97-248, sec. 402(a), 96 Stat. at 648, the tax treatment of any partnership item generally must be determined at the partnership level. Sec. 6221. TEFRA is a series of special tax and audit provisions that apply in all partnership proceedings (with exceptions not relevant here). See sec. 6231(a)(1). The goal of TEFRA is to have a single point of

**[*11]** adjustment for all partnership items at the partnership level. See <u>Kligfeld Holdings v. Commissioner</u>, 128 T.C. 192, 200 (2007). TEFRA, however, limits our jurisdiction at the partnership level to partnership items. Sec. 6226(f).[13]

A partnership item is "any item required to be taken into account for the partnership's taxable year under any provision of subtitle A [Income Taxes] to the extent [the] regulations * * * provide that, for purposes of this subtitle, such item is more appropriately determined at the partnership level than at the partner level." Sec. 6231(a)(3). The critical element is that the partnership is required to make the determination. Sec. 301.6231(a)(3)-1(c)(1), Proced. & Admin. Regs. But the failure of the partnership to actually make the determination does not prevent an item from being a partnership item. <u>Id.</u> A "nonpartnership item" is an "item which is (or is treated as) not a partnership item", sec. 6231(a)(4), and an "affected item" is a nonpartnership item that is affected by the determination of a partnership item, sec. 6231(a)(5).

## II.     Petitioner's Arguments

Petitioner contends that we lack jurisdiction to determine the partnership items of American Milling that respondent adjusted in the Milling FPAA because

---

[13]The Tax Court is a court of limited jurisdiction and can exercise jurisdiction only to the extent provided by statute. Sec. 7442.

**[\*12]** the Milling FPAA is a "reproduction" of the American Boat FPAA and

therefore violates the rule prohibiting respondent from issuing a second FPAA, see

sec. 6223(f). Alternatively, petitioner contends that we lack jurisdiction over the

Milling FPAA because: (1) all adjustments in the Milling FPAA are

computational adjustments flowing from the American Boat FPAA and there are

no affected items requiring factual determinations at the American Milling level,

and (2) respondent did not have authority to issue the Milling FPAA because

neither the Code nor the regulations authorize the issuance of an affected items

FPAA.[14]

III.    Analysis

      A.     <u>Whether the Milling FPAA Is a Duplicate of the American Boat
            FPAA and Is Therefore Prohibited Under Section 6223(f)</u>

Under section 6223(f), "[i]f the Secretary mails a[n] * * * [FPAA] for a

partnership taxable year with respect to a partner, the Secretary may not mail

another * * * [FPAA] to such partner with respect to the same taxable year of the

same partnership in the absence of a showing of fraud, malfeasance, or

---

[14]Because we find that the adjustments in the Milling FPAA are partnership items of American Milling and not merely affected items, see infra p. 22, we need not address petitioner's contention that respondent did not have authority to issue the Milling FPAA because an affected items FPAA does not exist in the Code or the regulations.

**[\*13]** misrepresentation of a material fact." Petitioner contends in substance that the Milling FPAA is a duplicate of the American Boat FPAA. Specifically, petitioner contends that the adjustments to the bases of the tugboats and the disallowance of the deduction for legal fees were made in the American Boat FPAA and finally determined in the District Court proceeding. Petitioner relies in part on our Opinion in Wise Guys Holdings, LLC v. Commissioner, 140 T.C. 193 (2013).

In Wise Guys, the Commissioner issued a valid FPAA to a partnership and thereafter issued a second FPAA for the same year to the same partnership. Id. at 194-195. We noted that the second FPAA did not set forth any partnership-level adjustment or determination that was not listed in the first FPAA and appeared to have been issued as the result of an administrative error. Citing section 6223(f), we held that the Commissioner was precluded from mailing a second FPAA to the same partnership for the same year absent a showing of fraud, malfeasance, or misrepresentation of a material fact. Because the first FPAA was valid and the Commissioner did not assert that the second FPAA was issued on account of fraud, malfeasance, or misrepresentation of fact, we concluded that the second FPAA was invalid. Id. at 199-200.

[*14] Petitioner contends that when we invalidated the second FPAA in Wise Guys we "did not require the two FPAA's to be identical, but instead recognized that the key factor in determining whether an FPAA was invalid pursuant to * * * [section 6223(f)] was whether the adjustments and determinations of the two FPAA's were identical."  Petitioner mischaracterizes our analysis in Wise Guys. We invalidated the second FPAA in Wise Guys because it was issued to the same partnership for the same taxable year and there was no showing of fraud, malfeasance, or misrepresentation of fact.  The similarity of the content of the two FPAAs was not essential to our holding in Wise Guys.  Instead, it simply aided our finding that the second FPAA was "more [likely] the result of a mistake or a lack of communication on the part of * * * [respondent] than of fraud, malfeasance, or a misrepresentation of a material fact."  Wise Guys Holdings, LLC v. Commissioner, 140 T.C. at 199-200.  Here, by contrast, respondent issued the Milling FPAA to the TMP of American Milling--not to the TMP of American Boat--for years distinct from those at issue in the American Boat FPAA.  Wise Guys is distinguishable because it involved a second FPAA issued to the same taxpayer for the same tax year.

Petitioner also contends that the Milling FPAA is a duplicate of the American Boat FPAA because (1) the adjustments in the Milling FPAA "are

**[\*15]** identical" to the adjustments in the American Boat FPAA, and

(2) respondent examined the partnership returns of American Milling as part of the

District Court proceeding.[15]  Petitioner's argument is difficult to understand given

that even a cursory examination of the two FPAAs reveals that they make

materially different adjustments to items of income and expense.  The American

Boat FPAA adjusts the ordinary income, capital contributions, outside basis,

portfolio income, and investment income that American Boat reported on its Form

1065 for 1998.  In contrast, the Milling FPAA adjusts the depreciation, capital

loss, and legal fees deductions that American Milling claimed on its Forms 1065

for 2000 through 2003.  None of the adjustments in the Milling FPAA is identical

to an adjustment in the American Boat FPAA--even if some of the adjustments in

the Milling FPAA are related to the adjustments in the American Boat FPAA.

---

[15]Petitioner also contends that the Milling FPAA is a duplicate of the American Boat FPAA "because American Boat was a disregarded entity * * * [for] all years in question."  However, American Boat did not become a disregarded entity until the deemed liquidation of the American Boat partnership, see Rev. Rul. 99-6, 1999-1 C.B. 432, when Mr. Jump and the Jump Trust transferred their interests in American Boat to American Milling, see secs. 301.7701-2(a), 301.7701-3(a) and (b)(1), Proced. & Admin. Regs.; see also sec. 1.708-1(b), Income Tax Regs.  For its 1998 tax year American Boat had multiple owners and filed a Form 1065.  As a result, American Milling and American Boat were separate entities for the period examined in the American Boat FPAA.

[*16] In addition, respondent's examination of American Milling's Forms 1065 for 2000 through 2003 as part of the District Court proceeding does not mean that the partnership items of American Milling were at issue in the District Court proceeding. Instead, respondent examined American Milling's Forms 1065 for 2000 through 2003 for purposes of calculating the TEFRA jurisdictional deposit under section 6226(e)(1) and establishing the sham nature of the Son-of-BOSS transactions.

Mr. Jump was an indirect partner in American Boat, see sec. 6231(a)(9) and (10), and respondent calculated the TEFRA jurisdictional deposit by including all adjustments flowing from the American Boat FPAA to Mr. Jump's returns, see sec. 301.6226(e)-1, Proced. & Admin. Regs.; part III supra pp. 5-6. These adjustments resulted in part from an examination of American Milling's returns for 2000 through 2003, and respondent's calculation of Mr. Jump's increased tax liabilities flowed from that examination. Indeed, respondent's calculations of the resulting tax due included the disallowed legal fees deduction, inflated depreciation deductions, and increased capital loss appearing on the Milling FPAA. Petitioner contends that because the adjustments to American Milling's returns were introduced into evidence during the District Court proceeding and

[*17] were included in calculating the TEFRA jurisdictional deposit, the District Court "made final" these adjustments. We disagree.

Under section 6226(f), the District Court's jurisdiction in American Boat extended only to "all partnership items of * * * [American Boat] for the partnership taxable year to which * * * [the American Boat FPAA] relates, the proper allocation of such items among the partners, and the applicability of any penalty * * * which relates to an adjustment to a partnership item". The District Court did not have jurisdiction to determine the partnership items of American Milling that respondent adjusted in the Milling FPAA, which are adjustments for a different entity and for tax years different from those at issue in American Boat. Moreover, even if the District Court had made affirmative findings regarding American Milling's outside basis in American Boat or American Boat's inside bases in the tugboats for 1998,[16] those determinations would not be conclusive regarding American Milling's bases in the tugboats for 2000 through 2003. See infra p. 21. Accordingly, we reject petitioner's contentions that the Milling FPAA

---

[16]The bases of the tugboats contributed to American Boat by American Milling were partnership items of American Boat. See, e.g., Nussdorf v. Commissioner, 129 T.C. 30, 41-42 (2007) (holding that the basis of property contributed to a partnership is a partnership item because "in order for a partnership to determine, as required by section 723, its basis in the property that a partner contributed to it, the partnership is required to determine the basis of such partner in such property").

**[*18]** is an improper second FPAA or that it is a duplicate of the American Boat

FPAA and therefore invalid under section 6223(f).

    B.    <u>Whether the Adjustments in the Milling FPAA Are Computational Adjustments Flowing From the American Boat FPAA</u>

Petitioner contends that the adjustments in the Milling FPAA "are nothing

more than computational adjustments * * * [that] do not require a partner level

determination." We disagree.

Section 6231(a)(6) defines computational adjustments as "the change in the

tax liability of a partner which properly reflects the treatment * * * of a

partnership item."[17] Thus, a computational adjustment is the consequence to the

partner of a determination, whether administrative or judicial, regarding a

partnership item.[18] Under section 6230(a)(1), "computational adjustments are

---

[17]American Milling's deduction for legal fees was not at issue in the District Court proceeding. To the extent petitioner contends that the deduction for legal fees is a computational adjustment flowing from the American Boat FPAA, we reject that contention. We consider only petitioner's contention that the adjustments to the depreciation deductions and capital loss are computational.

[18]We question petitioner's position that adjustments made to a partnership return may be characterized as computational adjustments. Partnerships do not pay Federal income tax, <u>see</u> sec. 701, and therefore there are no adjustments that change a partnership's tax liability, <u>see</u> sec. 6231(a)(6). We are mindful, however, that "[a]ll adjustments required to apply the results of a proceeding with respect to a partnership * * * to an indirect partner * * * [are] treated as computational adjustments." <u>See</u> <u>id.</u> Because we hold that the adjustments in the Milling FPAA

(continued...)

[*19] viewed as representing the 'deficiency impact' of the proper tax treatment of the underlying partnership items." Rawls Trading, L.P. v. Commissioner, 138 T.C. 271, 287 (2012). When computational adjustments flow from an affected item that requires a partner-level factual determination, section 6230(a)(2) affords the partner a prepayment forum to challenge the Commissioner's partner-level determinations. In the absence of any affected items requiring partner-level determination, the partner cannot dispute the Commissioner's computational adjustments in deficiency mode. Instead, the partner's remedy is limited to a claim for refund and refund litigation if the claim is denied. See sec. 6230(a)(1), (c)(4).

Petitioner contends that respondent's description of the adjustments in the Milling FPAA makes clear that the adjustments are merely computational because respondent expressly states that the adjustments to basis, depreciation, and loss are the result of the basis adjustments in the American Boat FPAA. However, respondent's description of the adjustments in the Milling FPAA simply notifies American Milling of the reason for the adjustments. It does not preclude the need

---

[18](...continued)
are partnership items of American Milling, see infra p. 22, we need not address this issue to conclude we have subject matter jurisdiction in this case.

[*20] for factual determinations to determine American Milling's correct bases in the tugboats and related depreciation deductions and capital loss amount.

Respondent contends that the adjustments in the Milling FPAA are both partnership items of American Milling and affected items flowing from the American Boat FPAA. He contends that American Milling's basis in American Boat and its bases in the tugboats received from American Boat are partnership items of American Milling because they are required to be taken into account for determining American Milling's income and loss. See sec. 301.6231(a)(3)-1(a)(1), Proced. & Admin. Regs. Specifically, respondent contends that the depreciation expenses and loss from the sale of certain tugboats "wear two hats" because they are partnership items of American Milling but were derived in part from American Boat.

The usual rule is that an asset distributed by a partnership to one of its partners has a basis equal to the partnership's basis in that asset. Sec. 732(a). But, under section 732(b), the basis of property (other than money) distributed by a partnership to a partner in liquidation of the partner's interest equals the partner's adjusted basis in the partnership, reduced by any money distributed in the same transaction. Accordingly, when American Boat liquidated, American Milling's

[*21] bases in the tugboats under section 732(b) were determined by reference to its outside basis in American Boat.[19]

The District Court did not determine American Milling's outside basis in American Boat as of December 31, 1998, the taxable year at issue in the American Boat proceeding. Moreover, even if the District Court had asserted jurisdiction to determine American Milling's outside basis, such a determination would not conclusively determine American Milling's bases in the tugboats for 2000 through 2003. Indeed, determining the legitimate bases of the tugboats and the resulting depreciation deductions and capital losses requires us to make specific factual findings at the American Milling level. For example, American Milling could have incurred capital improvement costs following the liquidating distribution that increased its bases in the tugboats. Determining that American Milling did not incur such costs is also a partnership-level determination. See, e.g., Greenwald v. Commissioner, 142 T.C. 308, 315 (2014); see also Domulewicz v. Commissioner, 129 T.C. 11, 20 (2007) ("Neither the Code nor the regulations thereunder require that partner-level determinations actually result in a substantive change to a

---

[19]Even if a partnership is disregarded as a sham for tax purposes, the Code provides that TEFRA procedures still apply in such cases as long as the purported partnership filed a partnership return--which American Boat did. See secs. 6231(g), 6233; see also sec. 301.6233-1(b), Proced. & Admin. Regs.

[*22] determination made at the partnership level."), aff'd in part, remanded in part sub nom. Desmet v. Commissioner, 581 F.3d 297 (6th Cir. 2009).

Finally, petitioner concedes that the adjustments to depreciation, capital loss, and legal fees in the Milling FPAA are correct. To the extent petitioner argues on brief that the adjustments in the Milling FPAA are improper and do not confer jurisdiction on us because they are not disputed or contested items, we reject that contention. Petitioner may not remove from our jurisdiction the determinations in the Milling FPAA and the explanation of items by conceding the adjustments therein. See, e.g., LTV Corp. v. Commissioner, 64 T.C. 589, 591 (1975).

We conclude that the adjustments to depreciation, capital loss, and legal fees deductions in the Milling FPAA are partnership items of American Milling, and we have subject matter jurisdiction in this case. We have considered the remaining arguments made by the parties and, to the extent not discussed above, conclude those arguments are irrelevant, moot, or without merit.

To reflect the foregoing,

An appropriate order will be issued.